DAN PANGOLAS v. GEORGE CALVET AND OTHERS.[1]

May 2, 1941.

No. 32,736.

[1]Reported in 297 N. W. 741.

*Peter E. Kamuchey* and *Samuel D. Finkelstein,* for appellant.
*Flesher & Young,* for respondents George and Clara Calvet.
*Gillette & Meagher,* for respondent Dwinnell & Company, Inc.

LORING, JUSTICE.

This case comes here on appeal by plaintiff from an order deny-ing his motion for vacation of a verdict directed in defendants' favor and for a new trial.

January 1, 1939, shortly after midnight at the Majestic Hotel, while attempting to descend a stairway connecting the ground floor with the basement, plaintiff slipped on the fourth step from the top and rolled down the stairs to the basement. He sued to recover damages for personal injuries from defendants Calvet, op-erators and owners of the Majestic Hotel and barroom, the room from which the steps lead to the basement, defendant Dwinnell & Company, Inc., owner of the hotel building, and defendants Van-derwarker and Templeton, trustees of the last will and testament of Henry Harrison Vanderwarker, the owner of the land upon which the hotel building is erected.

It appears that plaintiff and his wife closed his place of business about 9:15 p. m. New Year's Eve, had their dinner, and stopped in at the barroom of the Majestic Hotel to get a drink. During the afternoon the plaintiff had had some alcoholic beverages, and in the course of the evening he had four highballs, the last two of

which were drunk within half an hour of the unfortunate accident.

There was one light at the head of the stairway, so placed as to cause a shadow to be cast ahead of a person descending the stairs. A second light was attached to the basement ceiling, but a door opening constructed over the sixth step shaded the basement light until this step was reached. It appears that the steps are three feet nine inches wide and that the fourth step on which it is claimed plaintiff slipped is eight inches from front to back. The stairway has a 39-degree slope. Plaintiff alleged that the steps were wet and slippery at the time of the accident. At the trial the evidence showed that for two years prior to the accident plaintiff had used the stairway in question at least eight or ten times and that he never had any trouble in getting up or down safely. At the close of plaintiff's case defendants' motion for a directed verdict was granted on the ground of plaintiff's contributory negligence.

Plaintiff claims that the court erred in directing a verdict against him on this ground, but if the court was right on any other ground in directing the verdict the order must stand.

■ It is the plaintiff's claim, amongst other things, that the stairway was reconstructed contrary to the provisions of the building code of Minneapolis, which, amongst other things, adopts the provisions of the housing act, L. 1917, c. 137, 1 Mason Minn. St. 1927, § 1630-3, *et seq.* The difficulty with this (the plaintiff's) claim is that the Majestic Hotel was constructed years before the adoption of the building code or the housing act. Section 107.2 of the code provides:

"Existing buildings may be maintained in their present condition and occupancy except that such changes as are specifically required hereby or may become necessary for safety, shall be made when ordered by the Inspector of Buildings. Existing buildings complying with the requirements of this code for existing buildings may be altered and repaired at a cost of not exceeding fifty (50) per cent of their value without being made to comply with

the requirements for new buildings provided the occupancy is not changed and the hazard to occupants and surrounding property is not increased in the opinion of the Inspector of Buildings."

It is true that subsequent to the adoption of the code the lumber in the stairway was renewed, but the design was unchanged. The width of the step upon which plaintiff claims to have slipped was somewhat narrower than that provided by the code, and the stairway was also steeper; but under the provisions relating to maintenance of existing buildings these provisions of the code would not apply to the stairway.

■ Nor does the fact that the lighting of the stairway was somewhat inadequate inure to plaintiff's benefit. He testified: "If you pay attention you could see. I didn't pay attention, I just start to walk down slowly, and it is slippery * * * I take care of myself to go down as best I could if it was slippery or something in there, I just lose my balance and down I go." Plaintiff had frequently used the stairs and was quite familiar with them, and for quite a period of time he had taken his lunches in this barroom.

■ There is a further reason why the court was right in directing the verdict. From plaintiff's testimony it is clear that if the condition of the stairs had anything to do with his fall it was because the fourth step was slippery from being wet. There is no evidence whatever in the record to show how the dampness came to be on the step. It is true that ice was carried up these steps to the barroom, but it was always carried in tight metal containers, and there is nothing to show how long the steps had been wet or who was responsible for getting them in that condition. Consequently no negligence on the part of the Calvets was shown.

Order denying new trial affirmed.