LORETTA BALLWEBER v. EARL N. KLEIST.
JACOB L. WEINBERG, THIRD-PARTY DEFENDANT.
JACOB L. WEINBERG v. EARL N. KLEIST.

78 N. W. (2d) 671.

August 3, 1956—Nos. 36,800, 37,031.

*Chester D. Johnson,* for appellant (No. 36,800).
*Mahoney & Mahoney,* for appellant (No. 37,031).
*Freeman, Peterson, Hoppe & Gaughan,* for respondent Kleist.

NELSON, JUSTICE.

These actions arise out of an automobile collision that occurred on the streets of Minneapolis on July 1, 1953, at about 5:30 p. m. Plaintiff Loretta Ballweber sued the defendant Earl N. Kleist for damages growing out of personal injuries suffered as a result of the accident. Kleist as defendant and third-party plaintiff joined Jacob L. Weinberg as third-party defendant. Weinberg commenced a separate suit against Kleist for damages. The actions were consolidated for trial.

A verdict was rendered by the jury in the first action in favor of plaintiff Loretta Ballweber against both Kleist and Weinberg. Weinberg, as third-party defendant, moved the court below for an order for judgment notwithstanding the verdict. The court denied the motion, and Weinberg appeals from the judgment entered pursuant to the verdict. A verdict was rendered by the jury in the second action in favor of defendant Kleist. Plaintiff Weinberg moved for a new trial on the issue of damages or, in the alternative, for a new trial on all issues; the motion was denied; and he appeals from the order. In considering the questions raised on these appeals,

the prevailing parties below are entitled to the view of the evidence most favorable to the verdicts.

Plaintiff Loretta Ballweber had been working at the Weinberg home at 1339 Vincent Avenue North on the day of the accident. Weinberg owned a 1951 Plymouth automobile which he had parked in front of his home facing south preparatory to driving the plaintiff, when through with her work that afternoon, to meet her husband at Fourth Street and West Broadway in north Minneapolis. With the plaintiff seated beside him in the front seat as a passenger, he drove from his home south to Plymouth Avenue, made a left turn on Plymouth, then drove east to Fourth Street North, where he made a left turn proceeding northerly on Fourth Street North toward West Broadway. In going to that point he had to cross the intersection of Fourth Street North and 17th Avenue North.

Said Fourth Street North, which runs north and south, intersects at right angles with 17th Avenue North, which runs east and west At about the time Weinberg was approaching the intersection from the south intending to proceed through, Kleist was approaching the same intersection from the west intending to proceed through. Kleist was approaching to Weinberg's left. The two cars collided in the intersection, the Kleist car striking the Weinberg car along the center door post, front door, and front fender. There was no damage to the front of the Weinberg car.

Kleist admitted that he did not see the Weinberg car until approximately the time of the collision. His testimony was that during the last 50 feet on his approach to the intersection his attention was drawn to another car coming to his left from the north; that it did not have its signal light on to make a right turn; that he thought this car was going south through the intersection, but instead it made a right turn onto 17th Avenue. Kleist stated that the car coming into the intersection to his left from the north did not interfere with the driving of his own car except that it arrested his attention and he continued to watch it. As this other car approached the intersection, its speed was about 15 miles an hour. He also stated that he first looked at this car coming from the north when he was

about 10 to 15 feet west of the intersection. He has no recollection of having looked to the right before the collision occurred with the Weinberg car. He further testified that he was driving at about 20 miles an hour up until within 15 feet of the west edge of the intersection when he slowed down a little upon entering the intersection.

Weinberg first stated that he was traveling 20 to 25 miles an hour when in the middle of the block approaching the intersection; that he then slowed his car down to 15 or 16 miles per hour; and that as he got to the corner of the intersection he looked to his right where no traffic was in sight. He then looked to his left and saw a blue car which he estimated to be 35 or 40 feet west of the curb line of the intersection. He says he then looked straight ahead north and saw a car coming in a southerly direction on 4th Street; that the only car that seemed to be of any importance to him was the car to his left; that he looked again while moving into the intersection and kept going. He states that, when he was better than half way into the intersection, the collision occurred; that the Kleist car stopped at the point of impact so far as he can recall; and that his car came to a halt from 150 to 200 feet north of the north edge of the intersection running into the curb on the left or west side of 4th Street. The plaintiff Loretta Ballweber was thrown from his car when the impact occurred.

When again interrogated as to speed, Weinberg stated that he was going 17 or 18 miles an hour, maybe 20, as he got into the intersection, saw no apparent danger, and speeded up to get through. He states that at this time Mrs. Ballweber shouted "look out." He then said that when he first saw the Kleist car he was just entering the intersection; that he may have been two or three feet south of the curb line; and that he judged that at that time his own car was about 55 or 60 feet from the Kleist car, estimating the speed of the Kleist car at 20 to 25 miles an hour and again his own speed at 15 or 16 miles an hour.

Regarding the car coming from the north into the intersection, Weinberg testified that it made a right turn and went west; that the Kleist car was then coming east. He said he thought he was

already in the intersection when the car coming south on 4th Street turned west on 17th Avenue. Upon being asked whether he again saw the Kleist car before the impact, he answered "just a blur"; that it was two or three feet away; and that he could not estimate the speed of the Kleist car at that time. After his car had come to a stop at the left curb, north of the intersection, he went back to see what had happened to his passenger and found plaintiff Loretta Ballweber on the street alongside the curb. He called the police, and officer Charles H. Hawkinson came five or ten minutes later.

On cross-examination, Weinberg admitted that his car was at the south edge of the intersection at the time he first saw the Kleist car. At that time he estimated his speed at 16 or 17 miles an hour on driving into the intersection. He said he did not use his brakes, stating that there seemed to be no need for it. He admitted telling the officer that he was going about 20 miles an hour before entering the intersection.

Officer Hawkinson stated that when he talked to Weinberg he asked him what had happened and that Weinberg said he was approaching the intersection at 25 miles an hour and he got hit from his left. On cross-examination Hawkinson testified that Weinberg had said his speed was 25 miles an hour as he approached the intersection. He also said that Weinberg had stated to him that he could not say whether his speed was greater or less at the time of the impact.

Hawkinson said he talked to the plaintiff Loretta Ballweber and that in the course of the conversation she stated that Weinberg had been driving too fast; also that she had warned him. He was not certain whether he held this conversation with her at the scene of the accident or at the hospital, but that she appeared to him to be coherent when this conversation occurred. When questioned about speed at the trial, she said that she believed "15 miles an hour is fast." She seemed to have no recollection at that time of telling Weinberg that he had been driving too fast. She finally stated, however, "He must have been going about 15—no, or 20 or 25 but

I am not sure" but that she did not remember of his driving over 20 or 25 miles an hour.

Officer Hawkinson took measurements at the scene of the accident. He checked on the physical surroundings, determined for himself what he considered to be the point of impact, and then paced the distance from the west curb line to that point, which he found to be 15 feet. Pacing to the south curb line from the right side of the Kleist car proved to be nine feet according to his testimony. All witnesses agree that the day was clear and that the streets were dry.

There does not appear to be any testimony on the part of Weinberg himself that he placed any reliance upon Kleist's slowing down as he approached the intersection from the west.

■ A motorist having the right-of-way at an intersection need not anticipate that approaching drivers will violate the law or will not have control of their vehicles but rather he may assume that his rights will be respected.[1] When it becomes reasonably apparent, however, to a driver that his right-of-way may not or will not be respected, he must act accordingly and cannot rely upon this assumption.[2]

■ We have held that it is ordinarily a jury question as to whether a driver was justified in assuming that an approaching vehicle would stop or slow down for him.[3]

In the trial below, Weinberg moved for a directed verdict on the issue of his contributory negligence. That motion was denied. The court held Kleist negligent as a matter of law and instructed the jury to that effect, but submitted the question of proximate cause. Weinberg also moved the court to amend his complaint to

---

[1] Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66 (through street); Salters v. Uhlir, 208 Minn. 66, 292 N. W. 762 (private roadway). One may assume that a vehicle on the left which has stopped will not suddenly be propelled forward. Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357.

[2] Dose v. Yager, 231 Minn. 90, 42 N. W. (2d) 420; Mozes v. Borlaug, 190 Minn. 568, 252 N. W. 420.

[3] E. g., Salters v. Uhlir, supra; Ernst v. Union City Mission, 199 Minn. 489, 272 N. W. 385; Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188.

allege willful and wanton negligence on the part of Kleist. The court denied the motion on the grounds of it being untimely. The court in its instructions to the jury called their attention to M. S. A. 169.01, subd. 36, defining an intersection; and read § 169.14, subd. 1, as to speed restrictions, as follows:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

This was followed by § 169.14, subd. 2, as to speed limits; § 169.20 on right-of-way when approaching intersections and the forfeiture of right-of-way which becomes applicable if a driver approaches an intersection at an unlawful speed; and an explanation of § 169.96 as to interpretation and effect of the Highway Traffic Regulation Act in civil actions.

The court by way of interrogation submitted the following issues to the jury:

"(1) Was the negligence of defendant, Earl N. Kleist, a proximate cause of this accident?

"(2) Was the third party defendant, Jacob L. Weinberg, guilty of negligence?

"(3) If 'yes,' was that negligence a proximate contributing cause of this accident?"

The jury answered all interrogatories in the affirmative. On appeal Weinberg contends (1) that the evidence if used at the trial below compels a finding that he was free from contributory negligence as a matter of law; and if not in so many words in effect contends (2) that the trial court erred in denying Weinberg's motion to amend his complaint to include an allegation of willful and intentional negligence.

As to the first point Weinberg contends that he performed all duties which the due care rule imposed upon him. He argues that his speed was at all pertinent times reasonable under the circumstances. He asserts that he maintained a proper lookout. He says that these factors combined with his possession of the right-of-way can lead to but one conclusion—that Weinberg was not contributorily negligent as a matter of law. The trial court, however, concluded differently and reasoned that even if a man has the right-of-way he is not entitled to go into the intersection without seeing what is approaching.

It is apparent that the issue of Weinberg's contributory negligence was left to the jury because the evidence presents the question as to whether or not there was in fact the maintenance of a proper lookout on his part. Additionally, the court may well have determined that since estimates of speed submitted were largely those of the drivers of the respective automobiles, and since the physical facts were somewhat unusual—the Kleist automobile coming to a stop approximately at the point of impact and the Weinberg car coming to a stop from 150 to 200 feet north of the intersection, after running into the curb on the west side of the street—all this together with an apparent failure to keep a proper lookout on the part of both drivers presented fact questions which only the triers of fact were entitled to determine.

■ We have held that, where the physical facts are capable of having more than one interpretation and the testimony as to such facts is contradictory, the court should submit the issue to the jury as a question of fact. Sundeen v. Barthel, 241 Minn. 398, 63 N. W. (2d) 257.

■ The general rule of construction which prevails in this state is that the first sentence of § 169.20, subd. 1, providing that the driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway, is modified by the second sentence, providing that when two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left

shall yield the right-of-way to the vehicle on the right. This means that the driver on the left, even though he may reach the intersection first, must yield the right-of-way to the driver on the right where they approach the intersection so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed. Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; Webber v. Seymour, 236 Minn. 10, 51 N. W. (2d) 825.

■ This court, however, in Dose v. Yager, 231 Minn. 90, 98, 42 N. W. (2d) 420, 426, said, "The statute requiring reduced speed at intersections bespeaks precaution, even from those having the right of way." In Webber v. Seymour, *supra*, even though it was held that the driver of defendant's car on the left was negligent as a matter of law, the issue of the contributory negligence of the driver who had the right-of-way in that case was held for the jury, and this court said in that case that, even though the driver on the right may have the right-of-way, this does not relieve him from exercising due care as he approaches an intersection.

■ The court made it clear in the Kujath case that the right-of-way rule when applicable to an intersection must be applied in the light of all existing circumstances in each and every case where it is in effect, and this court in the Kujath case also quoted with approval from Ranum v. Swenson, 220 Minn. 170, 174, 19 N. W. (2d) 327, 330, the following:

"* * * We expressly reject the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances."

It is clear, then, that the surrounding circumstances which existed at the time of the accident are required to be taken into consideration by the court in cases which would determine whether a verdict of no negligence on the part of Weinberg was justifiable. Consideration must be given to speed of cars, weather conditions, conditions of the highways and streets, the lack or presence of highway obstructions and of distractions, the contour of the surrounding area, the question of keeping a proper lookout, as well as physical facts which

have a bearing upon the situation and might well lead to reasonable and justifiable inferences and deductions in the factfinding field.

 We are concerned here only with the question of whether Weinberg's alleged contributory negligence was a fact question for the jury. Contributory negligence involves two essential elements, namely, want of ordinary care plus causal connection. 13 Dunnell, Dig. (3 ed.) § 7015. We think it the rule that regardless of how negligent Weinberg might have been, if his actions did not contribute to the happening of the accident here involved proximately and directly as a cause, the charge of contributory negligence against him would not be effective. Weinberg testified that he did not see or observe the Kleist automobile until he had reached the south edge of the intersection, or maybe as he said at a point two or three feet from it. In fact, a careful scrutiny of all the testimony might well cause the jury to speculate, and reasonably so, whether or not either driver saw the other until just before the accident, since Weinberg indicates by his testimony that after reaching the edge of the intersection he speeded up, on his way, to go through it.

We said in Ranum v. Swenson, *supra,* that estimates of speed, distance, and time, especially if made by the occupants of moving vehicles, even when danger is not imminent, involve the widely varying factors of human error and are not in themselves to be regarded as conclusive. Arguments based upon such estimates may have considerable probative weight before the trier of fact, but little force before a court of review passing on an issue that has already been determined adversely to an appellant.

The jury was not bound here upon the state of the record to accept estimates of speed and distance by the drivers or by others who testified in the instant case. The change and variance in estimates and the apparent uncertainty of those who told the jury about the speed of the cars gave rise to inferences which might well lead the jury to draw different conclusions in determining what they consider the true facts of the situation. We believe that here, and under all the existing circumstances which the evidence presents, the question of Weinberg's contributory negligence is one of fact and not one of law.

Necessarily, we must review the evidence and the inferences to be reasonably drawn therefrom in the light most favorable to the prevailing parties. Conflicts in the evidence are for the jury. If the evidence here is taken and considered from its four corners, any claim that the verdict was based on mere conjecture or speculation has little persuasion.

We cannot say that reasonable men and women might not have come to the same conclusion as the jury did in the instant case. The evidence is ample to support the verdict, and as to the question of contributory negligence, it is only where the evidence thereof or the lack of it is so clear as to leave no room for an honest difference of opinion among reasonable men that the court can enter upon the province of the jury and determine the matter as a question of law.

The question of whether the trial court erred in denying Weinberg's motion to amend his complaint to include an allegation of willful and intentional negligence is hardly impressive. There is no evidence in the record that Kleist either looked or saw the Weinberg car coming to his right at any appreciable length of time before the accident occurred. It seems to be well established that the existence of willful or wanton negligence is dependent upon when a discovery of the peril was made.

In Spartz v. Krebsbach, 226 Minn. 46, 47, 31 N. W. (2d) 917, 918, this court said:

"Willful negligence embraces conduct where the infringement of another's right is not only intended but also it is foreseen that the conduct pursued will result in such invasion."

13 Dunnell, Dig. (3 ed.) § 7036, contains the following comment on willful or wanton negligence:

"* * * Willful or wanton negligence, in this connection, means 'a reckless disregard of the safety of the person or property of another, by failing, after discovering the peril, to exercise ordinary care to prevent the impending injury.' * * * It is a failure, after, and not before, discovering the peril, to exercise ordinary or reasonable care to avoid the impending injury. * * * There is no proof of what is called 'willful negligence', unless it is shown that

defendant discovered plaintiff's peril at such a time and under such circumstances as offered an opportunity, and in consequence imposed a duty on defendant, to take some step to prevent the injury."

The matter of granting or denying the amendment to the complaint at the time it was made was discretionary with the trial court. The facts of the case do not indicate an abuse of discretion therein.

Affirmed.