## MARY MOCUIK AND ANOTHER v. DANIEL SVOBODA AND ANOTHER.
## DMYTRO TATRYN, APPELLANT.

93 N. W. (2d) 547.

November 28, 1958—Nos. 37,442, 37,443.

*Ralph T. Lilly, F. P. Bradford,* and *Thomas, Bradford, King &
Collatz,* for appellant.

*Iverson, Coulter & Nelson* and *Charles R. Coulter,* for respondent
Svoboda.

*Edward J. Callahan, Allen T. Rorem,* and *Walter W. Laidlaw,* for
respondents Mocuik.

KNUTSON, JUSTICE.

This case arises out of a collision between an automobile driven by
defendant Dmytro Tatryn and one driven by defendant Daniel Svoboda

at an intersection of Trunk Highway No. 7 and Hyland Road in Hennepin County. Trunk Highway No. 7 is a four-lane highway running east and west from Minneapolis to Minnetonka. It is 54 to 66 feet wide, with a 54-foot pavement. The two eastbound and the two westbound lanes are not separated by a boulevard, but the center is defined by a double line. The posted speed limit is 50 miles per hour.

Hyland Road is a two-lane highway running north and south and intersects Highway No. 7 almost at right angles. There are stop signs on Hyland Road at the approach to Highway No. 7. The sign on the northwest corner of the intersection, with which we are concerned, is 15 feet north of the concrete pavement of Highway No. 7.

The collision occurred on July 19, 1953, shortly after 8 p. m. The weather was clear, and at the time of the collision it was beginning to get dusk.

While the testimony of the two defendants is in conflict as to how the accident happened, the jury was at liberty to accept the version of Svoboda. He testified that he approached Highway No. 7, traveling south on Hyland Road, and came to a stop even with the stop sign. He remained there 30 to 45 seconds and then eased up to a position about 5 feet north of the pavement. He remained at that point while he permitted some automobiles traveling on Highway No. 7 to go past him. He then looked to the east and saw two cars approaching about 1,000 feet away. He looked to the west and saw a car approaching about 600 feet away. He then proceeded to cross Highway No. 7, reaching a speed of 10 to 15 miles per hour when he crossed the centerline. When he next looked to his right, at the time he entered the southerly or eastbound lane of the highway, Tatryn's car was about 50 feet away. He tried to accelerate his car but was struck on the right front door, and at that time he was almost entirely in the south lane of the two eastbound lanes of the highway, which would place him about three-fourths of the way through the intersection.

Tatryn claims that he was traveling east at a speed of about 35 to 40 miles per hour in the north lane of the two eastbound lanes of the highway. He said that he first saw the Svoboda car when he was about 100 feet west of the point of collision. Svoboda was then moving through the intersection. He claims that there were some bushes on the north-

west corner of the intersection which obscured his view to the north, but this is denied by Svoboda, who claims that there was nothing to obscure the vision of a driver either on Hyland Road or on Highway No. 7.

Mary and Michael Mocuik were riding as guests in the automobile of Tatryn. Michael is the uncle of Tatryn. No question of contributory negligence is involved.

The jury returned verdicts for both plaintiffs against Tatryn and absolved Svoboda of liability. Motions were made by plaintiffs in both cases for judgment against Svoboda notwithstanding the verdict. Defendant Tatryn moved in both cases for a new trial only. The court denied all motions in one combined order. Judgment was entered, and Tatryn appeals from the judgments and from the orders denying his motions for a new trial, as well as from the orders denying plaintiffs' motions for judgment notwithstanding the verdict. Plaintiffs have not appealed. The appeals were heard together, and the same questions are involved in both cases, so they will be treated as one appeal.

■ Plaintiffs now move for dismissal of the appeals taken from the orders denying their motions for judgment notwithstanding the verdict and from the orders denying defendant Tatryn's motions for a new trial, on the ground that the appeals were not timely.

M. S. A. 605.08 reads:

"An appeal from a judgment may be taken within six months after the entry thereof, and from an order within 30 days after written notice of the same from the adverse party."

The orders of the trial court are dated August 8, 1957, and were filed on August 9, 1957. On August 21, 1957, plaintiffs served a copy of the orders on both defendants by mail. On August 27, 1957, defendant Svoboda served a copy of the order on defendant Tatryn. The appeals were taken on September 25. The question presented is whether service of a copy of the orders by plaintiffs on August 21 was effective to start the time for appeal running as to all parties who were served with a copy of the orders. Tatryn's motions for a new trial were directed against both plaintiffs and defendant Svoboda. Plaintiffs clearly were adverse parties as to this motion. Tatryn contends that service must be made by

a prevailing party and that, inasmuch as plaintiffs were not prevailing parties, service by plaintiffs was ineffective to start the time running for appealing from the order. The statute does not provide for service by a prevailing party. It requires service by an adverse party. Plaintiffs clearly were adverse parties as to the motions of defendant Tatryn for a new trial. The orders denying plaintiffs' motions for judgment notwithstanding the verdict were not appealable.[1] It follows that service by plaintiffs of the orders denying the motions for a new trial set the time for appealing from the orders running as to those upon whom they were served. Consequently, it must follow that the appeal from the trial court's orders is not timely and must be dismissed.

■ On the appeal from the judgment, defendant Tatryn contends: (1) That defendant Svoboda was negligent as a matter of law and that the trial court therefore erred in denying plaintiffs' motion for judgment notwithstanding the verdict; and (2) that the court erred in instructing the jury on the question of speed; hence that there should be a new trial.

Defendant Svoboda contends that his codefendant Tatryn, appellant here, is in no position to claim error as a result of the denial of *plaintiffs'* motions for judgment notwithstanding the verdict.

It is a general rule that a party to litigation may not on appeal assign errors affecting other parties but may assign only errors that are prejudicial to him. He cannot take advantage of errors as to other parties.[2]

■ Under the rule of American Motorists Ins. Co. v. Vigen, 213 Minn. 120, 5 N. W. (2d) 397, 142 A. L. R. 722, the verdict of the jury absolving Svoboda from liability effectively deprives defendant Tatryn of any recourse against Svoboda for contribution. Whether this decision *is sound or not, we need not now determine.*[3] As long as it stands, the only relief a defendant can have against a codefendant who is absolved of liability by the jury will be limited to his right to question

---

[1]Caswell v. Minar Motor Co. 240 Minn. 213, 60 N. W. (2d) 263.

[2]In re Estate of Wilson, 223 Minn. 409, 27 N. W. (2d) 429; 1 Dunnell, Dig. (3 ed.) §§ 360 and 419a.

[3]See, Bunge v. Yager, 236 Minn. 245, 52 N. W. (2d) 446.

the action of the jury in so doing in this court. Why defendant Tatryn did not move for judgment notwithstanding the verdict in the alternative we do not know. Somewhat the same question as exists here was presented in Bocchi v. Karnstedt, 238 Minn. 257, 56 N. W. (2d) 628. Defendant Tatryn clearly was prejudiced by the court's denial of plaintiffs' motions for judgment against Svoboda notwithstanding the verdict in view of the decision in the Vigen case. He should be permitted to review the propriety of that order in an appeal from the judgment in view of the Vigen case.

On an appeal from a judgment, this court may review the propriety of a denial of a motion for judgment notwithstanding the verdict, but such appeal is limited.[4] In the consideration of such review, the court accepts the evidence most favorable to the verdict.[5]

■ Under the applicable rules governing such review, there was no error in denying plaintiffs' motions for judgment notwithstanding the verdict. The evidence as to the negligence of defendant Svoboda clearly presented a fact issue for the jury. The jury could have found that the Tatryn car was 600 feet from the intersection when Svoboda started to cross and that the Tatryn car then was not an immediate hazard to such entry. It could have found further that Svoboda maintained a proper lookout and that the speed of his car was reasonable under the circumstances. Undoubtedly the jury accepted Svoboda's version of what happened, which it had a right to do. In view of the conflict in the evidence, the question of who was telling the truth was for the jury's determination.

■ Finally, Tatryn contends that the court erred in instructing the jury as to the statutory rule of speed as embodied in § 169.14, subd. 3. Svoboda contends that Tatryn failed to properly raise this issue in the trial court, but we need not decide that matter since we are convinced that the instruction was correct in any event.

Defendant Tatryn relies on Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320, and Neal v. Neal, 238 Minn. 292, 56 N. W. (2d)

---

[4]Eichler v. Equity Farms, Inc. 194 Minn. 8, 259 N. W. 545.

[5]Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260; Schneider v. The Texas Co. 244 Minn. 131, 69 N. W. (2d) 329.

673, where we held that a driver on a through highway need not reduce his speed in approaching every intersection. In approaching intersections protected by stop signs, he may assume, until he sees or should see otherwise, that drivers approaching a through highway will stop in obedience to the stop sign. In the Schleuder case we said (239 Minn. 459, 59 N. W. [2d] 324):

"* * * a person driving on a through highway at 60 miles an hour in the daytime need not reduce his speed while approaching and passing over intersections along the through highway protected by stop signs where no special hazard exists other than an automobile approaching the intersection or stopped at it in obedience to a stop sign, *provided that the driver of the automobile on the through highway is so close to the intersection as to constitute an immediate hazard to the automobile on the intersecting highway and provided further that the driver of the automobile on the through highway does not have reason to know that the driver on the intersecting highway is not going to obey the statute and yield the right of way to him.*" (Italics supplied.)

In the Neal case, an arterial-highway-intersection case such as this, we said that, where the speed of the driver on the arterial highway is prima facie lawful under § 169.14, subd. 2, and where the application of the reduced-speed statute is predicated solely upon the presence of an intersection and none of the other factors specifically enumerated in § 169.14, subd. 3, are present, to hold that the reduced-speed statute requires the driver on the arterial highway to always reduce his speed when approaching and crossing an intersection protected by such stop signs would be unreasonable and impractical.

The proper application of the rule appellant seeks to invoke and the statutory provisions involved here have been adequately discussed in the recent case of Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. (2d) 205. It is obvious that the rule is subject to the qualifying language found in Schleuder v. Soltow, 239 Minn. 453, 459, 59 N. W. (2d) 320, 324, and quoted with approval in the Tollefson case (252 Minn. 374, 90 N. W. [2d] 208), which reads:

"* * * *provided that the driver of the automobile on the through highway is so close to the intersection as to constitute an immediate*

*hazard to the automobile on the intersecting highway* and provided further that the driver of the automobile on the through highway does not have reason to know that the driver on the intersecting highway is not going to obey the statute and yield the right of way to him." (Italics supplied.)

In the case now before us, as in the Tollefson case, the evidence justified a finding by the jury that, at the time the automobile crossing the through highway entered the intersection, the driver of the automobile on the through highway was so far away that he did not constitute an immediate hazard. The jury could find also that the driver on the through highway had ample time to see that the driver of the car approaching the through highway was going to proceed through it. Under these circumstances, the jury could find that it was the duty of the driver on the through highway to reduce his speed so as not to collide with the automobile crossing the through highway. If the driver on the road approaching the through highway came to a stop and then proceeded through the intersection at a time when the driver on the through highway was so far away as not to constitute an immediate hazard, it would be the duty of the driver on the through highway to so reduce his speed as to yield the right-of-way to the automobile first entering the intersection, in accordance with the statute. Under these circumstances, it was proper for the court to instruct the jury on the statutory rules governing the correlative rights and duties of the two drivers as they approached this intersection.

When the instructions of the court are read as a whole we find no reversible error.

Affirmed.