RUSSELL NAMCHEK v. OWEN F. TULLEY
AND ANOTHER.

107 N. W. (2d) 856.

March 3, 1961—No. 38,056.

*Montague, Applequist, Lyons, Nolan, Nordine & Knetsch* and *Charles T. Barnes,* for appellants.

*Benton & Weber,* for respondent.

Knutson, Justice.

This is an appeal from an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial.

For several years prior to November 19, 1957, defendants, Owen F. Tulley and Madge Tulley, owned and maintained a building known as the Tulley Apartments, which consisted of two apartments on the first floor, two on the second floor, and one in the basement. To reach the basement apartment, it was necessary to descend a stairway which curved to the left near the top. There were no handrails on the stairway. There was a ledge about 5 or 6 inches wide on the right side as a person descended the stairway, which ledge ran in a horizontal position so that the farther down the stairway a person descended the higher the ledge was from the stairway. The stairs themselves were approximately 42 inches wide, with a 7-inch riser for each step. Where the stairway curved, the steps tapered from one side to the other. While there was some dispute in the evidence, the testimony is that by actual measurement the steps on the curve as one descended were 14 inches wide at the right end and 6 inches wide at the other.

The stairway was lighted by a 60- or 40-watt bulb located in the ceiling and controlled by switches at both the top and bottom of the stairs.

On November 19, 1957, plaintiff, Russell Namchek, who was employed by a milk company to deliver milk to its customers, entered the building with a carrier in which he had milk containers and which he carried in his right hand. He was wearing oxford shoes and overshoes with flat heels and corrugated bottoms. The zippers on the overshoes were zipped and the blue overalls which he wore were not tucked into the overshoes. A light snow had fallen during the evening, and the streets and sidewalks were somewhat wet. He stamped his feet as he entered the building. He proceeded to deliver milk to defendants' apartment, which was located on the first floor. He then turned on the switch for the basement stairway and proceeded to descend; when he had reached the third step from the top he fell and fractured his leg. He had theretofore used the stairway approximately 80 times without any difficulty.

There is evidence in the case that no one had ever fallen on this stairway before during the 17 years that defendants had occupied the premises. Witnesses who either had been or were occupants testified that they had used the stairway without any difficulty and that the lighting was adequate.

The jury returned a verdict for plaintiff.

The appeal here involves essentially the question whether the evidence sustains the verdict on the theories on which the case was submitted to the jury.

The trial court submitted the case to the jury on two possible theories of negligence; namely, that defendants were guilty of negligence in their failure to provide handrails and that the lighting was inadequate.

■ The applicable law with respect to the absence of a handrail as a basis for a finding of negligence has been adequately stated in Vosbeck v. Lerdall, 245 Minn. 164, 72 N. W. (2d) 371, and Jeske v. George R. Wolff Holding Co. 250 Minn. 16, 83 N. W. (2d) 729. In the Vosbeck case we said (245 Minn. 169, 72 N. W. [2d] 375):

"* * * The landlord who retains possession and control of stairways for the common use of his tenants, although not an insurer of the safety of such stairways, owes the duty of exercising ordinary care to see that they are constructed and maintained in a reasonably safe condition for the use of such tenants. [Citing cases.] While it has been held that the absence of a handrail on an *ordinary* stairway free of defects is not indicative of the failure of a landlord to exercise reasonable care [citing cases], this rule would not apply where the stairway involved is defective or where it has been constructed or is maintained in a way which might be regarded as dangerous for tenants using the same. In such instances, it might well be found that ordinary care would require a handrail thereon as a safety measure. [Citing cases.]"

In that case we held that it was a question for the jury to determine whether absence of a handrail would constitute negligence. What we said there is equally applicable to one who is not a tenant but who has a right to use the stairway. The facts in the Vosbeck case are so similar to those here that it must be held that the case is controlling

on this issue, and the court properly submitted to the jury the question of whether defendants were guilty of negligence in failing to provide a handrail.

■ On the question of adequacy of lighting, however, it appears to us that the evidence is insufficient to justify a finding of negligence.[1] The only evidence upon which a finding of negligence in that respect can rest is that of plaintiff himself. He testified:

"Q. And you testified you turned the light on that morning?
"A. Yes.
"Q. Was the light working?
"A. Yes.
"Q. And would you describe to the jury what you—when you turned the light on what did it do with reference to lighting up the area?
"A. You mean what the light would do?
"Q. Yes. Tell the jury about the light itself.
"A. Well, it was sort of a faint light.
"Q. Did you have any difficulty in seeing?
"A. Yes. It was fairly dark down there."

On cross-examination, plaintiff testified:

"Q. You had never had any trouble there before, had you?
"A. No.
"Q. And the light was strong enough to illuminate those steps, wasn't it?
"A. Pretty faint.
"Q. Well, you could see what you were doing, couldn't you, as you walked down the steps?

\* \* \* \* \*

"A. Yes.

\* \* \* \* \*

"Q. So that the lighting of that stairway was not of the type, was not so dim that you couldn't see what you were doing; isn't that right?

---

[1]See, Pangolas v. Calvet, 210 Minn. 249, 297 N. W. 741.

"A.  You could see faintly, yes.

"Q.  You could see better than faintly there, couldn't you, Mr. Namchek?

\*    \*    \*    \*    \*

"A.  Yes."

On direct examination, plaintiff testified:

"Q.  Do you have any idea why you fell at that time?

"A.  No."

At least three other witnesses who had lived or were living in the apartment and had frequently used the stairway testified that the lighting was very adequate. It is conceded that the 40- or 60-watt bulb, enclosed in a glass receptacle, was located immediately above the stairway at the place where plaintiff fell.

There is no claim that the stairway itself was defective. The stairs were covered with a rubber mat that was permanently affixed to the stairs. Under these circumstances, it was error to submit to the jury the question of whether defendants were negligent in failing to provide adequate lights, and, inasmuch as it is impossible to tell on what theory the jury based its verdict, there must be a new trial.

■  Defendants also contend that plaintiff was guilty of contributory negligence or assumption of risk as a matter of law and that they are therefore entitled to judgment.

While the evidence on this question is extremely close, we think that under the rule stated in Vosbeck v. Lerdall, 245 Minn. 164, 72 N. W. (2d) 371, it was sufficient to present a jury question. Consequently, there is no reversible error in that regard.

Reversed and new trial granted.