ANDREW NELSON v. VILHELM HOLAND AND
ANOTHER.
ERICK FAGERHOLM, APPELLANT.

139 N. W. (2d) 518.

December 31, 1965—No. 39,637.

*Miley, Nord & Webster* and *David W. Nord,* for appellant.
*Roy A. Schwappach,* for plaintiff respondent.
*A. T. Whaley* and *James C. Beckstrom,* for defendant respondent.

NELSON, JUSTICE.

This action arises out of an intersection collision between a pickup truck operated by defendant Vilhelm Holand and an automobile operated by defendant Erick Fagerholm in which plaintiff, Andrew Nelson, was a passenger. Plaintiff had a verdict against both defendants. After the court denied his alternative motion for judgment notwithstanding the verdict or a new trial, defendant Fagerholm appealed from the judgment.

If all conflicts in the evidence are resolved in favor of the prevailing party below, the facts appear to be as follows: At about 6:30 a. m. on May 9, 1960, appellant was driving his automobile west on 50th Street in the city of Minneapolis on the way to work at Minneapolis Honeywell. Riding with him in the car were three passengers, plaintiff seated in the right front seat and a Miss Cochran and a Mrs. McMurtrie in the rear seat. At the same time Holand was driving his pickup truck north on France Avenue. Both were approaching the intersection of 50th Street and France Avenue South, which is regulated by automatic semaphores. The weather was clear and the road conditions good on the day and time in question. Traffic was not heavy at that time of day. The semaphores were flashing amber for the traffic on 50th Street and red for the traffic on France Avenue. The testimony is in conflict as to what occurred leading up to the accident, but it is not disputed that the car and truck collided at the intersection causing injuries to plaintiff.

Fagerholm testified that in the block leading to the intersection he was driving 30 miles an hour but slowed to about 20 or 25 miles per hour as he drove into the intersection. His testimony was that he saw the Holand truck some 50 to 75 feet south from the intersection and that it seemed to be slowing to stop for the flashing red semaphore. He then looked to the right and proceeded to pass through the intersection. Then plaintiff shouted that the truck was going to hit them and Fagerholm looked to his left again and saw the truck almost upon him. According to the record the Holand truck was already in the intersection when Fagerholm turned his head to look again to the left. The truck came to a stop in the middle of the intersection, and the Fagerholm car whirled around and came to a stop at the curb facing east on 50th Street.

On cross-examination plaintiff's attention was called to a statement he

had given 2 days after the accident. The statement was read to him and he adopted it as true. The following is a portion of that statement:

"* * * We were all enroute to work and were moving in a generally westerly direction on West 50th St. at a speed of about 20 miles an hour as Mr. Fagerholm slowed down before we entered the intersection. I remember that when I first noticed the truck I would say that it was about thirty to forty feet to the south of the south edge of the intersection and although I would not be able to say how fast the truck was going, it seemed to be going slowly as it approached the intersection but then it speeded up and the driver of the truck did not stop at all for the flashing red light against traffic on France Ave., and he headed north on France right into the intersection. The traffic signal light was flashing amber for traffic on 50th St. and this is the usual and we travel on the same road most every morning. When I first saw the truck at 30 to 40 feet distance from the intersection I would say that our car was just starting to enter the intersection, with the front of the auto about even with the east edge of the intersection and at that time I thought that the truck would stop for the stop sign however it just continued on into the intersection and in fact seemed to speed up as though the driver of the truck had stepped on the accelerator rather than the brake."

Mrs. McMurtrie, who was sitting in the left rear seat of Fagerholm's car, saw the truck some 30 to 40 feet back from the intersection and going at a moderate speed. She said it appeared to speed up as it entered the intersection and that it did not stop for any signal. Miss Cochran did not see the truck until it was a few feet away and after plaintiff had shouted, "It's going to hit us."

Holand's testimony was somewhat in conflict with that of Fagerholm and his passengers. He testified that he came to a full and complete stop at 50th Street in obedience to the flashing red semaphore; that he looked first to the left and then to the right and saw no traffic approaching; that he pulled ahead a little and looked left again and seeing nothing coming from that direction started forward; that when he was 5 to 8 feet past the centerline of 50th Street he "just happened to look up" and saw the Fagerholm car; and that he then immediately applied his brakes and came to a stop leaving about a foot of skid marks. In discussing what happened

Holand said, "Well, just as I stopped there was this car, and it appeared to touch just the rear of his front fender and door and my bumper caught on his rear quarter section and he proceeded on and spun around." His impression was that the Fagerholm car was "going quite fast," but he did not claim that it was going over 30 miles per hour.

Fagerholm admitted that he did not honk his horn; that he did not turn his wheels to the right or left prior to the accident; and that he did not remember applying his brakes prior to the accident. Mrs. McMurtrie testified that she cannot remember Fagerholm's honking his horn, applying his brakes, or turning his wheels to the right or left prior to the accident. It would appear that everyone in the Fagerholm vehicle except the driver watched the Holand vehicle as it approached the intersection. Miss Cochran, however, stated that she did not see the truck until plaintiff shouted, "It's going to hit us." It appears that Fagerholm did not see the truck during this period and does not know whether Holand stopped for the red light or not. Fagerholm claims that Holand's truck struck his automobile broadside, but this would ignore the existence of scratch marks on the front quarter section of the Fagerholm car. It would appear that the damage to the front of the Fagerholm car furnishes physical evidence which lends support to the testimony of Holand.

Fagerholm brought a cross-claim against Holand for indemnity or contribution, and during the trial he made several motions for a directed verdict, which the trial court denied. Fagerholm on appeal contends that the trial court erred in denying his motions for a directed verdict; his motion for judgment notwithstanding the verdict; and his motion for a new trial.

The trial court in its charge to the jury defined the issues as follows:

"* * * Yesterday afternoon, in chambers, each defendant withdrew his claim of contributory negligence or assumption of risk on the part of the plaintiff, so that is no longer an issue in the case, and I have ruled that in this case this was not an unavoidable accident and that under the circumstances of this case the plaintiff is entitled to recover from one or both of the defendants. So the issues as they remain are substantially these: First, were both defendants guilty of negligence that was a direct cause of the accident and the resulting injuries? Second, if both were not so guilty,

which of the two was guilty of negligence that was a proximate cause or direct cause of the accident and the resulting injuries? And three, after you make that determination, after you determine whether your verdict is to be against both defendants or against just one of them, you will determine the amount of damages to which the plaintiff is entitled.

\* \* \* \* \*

"Now, if you find that there was negligence on the part of either or both, it is the law that something more is necessary before the negligent person is responsible. I mean by that that the negligence must have been what we usually refer to as a proximate or direct cause of the accident and the resulting damages.

"Even if a person is negligent, he is not responsible unless his negligence was at least one of the actual causes of what happened, and negligence makes no difference unless the accident and resulting injuries were in fact caused or brought about, at least in part, by that negligence and not by some other intervening, efficient cause.

"Now, it goes without saying, from what I have said, that the acts of one or two or more persons may be negligent and may be direct or proximate causes of an accident and resulting injuries and damages. In that connection, you are instructed that there may be more than one direct cause of an accident and resulting injury, and when the effects of negligent conduct of two or more persons actively works at substantially the same time to cause the accident, each may be a direct cause of the accident and resulting harm."

Appellant has taken no issue with the court's instructions and does not claim that the verdict is excessive.

This court in the recent case of Pluwak v. Lindberg, 268 Minn. 524, 130 N. W. (2d) 134, held that proximate cause, like negligence and contributory negligence, is a fact question which ordinarily must be left to the jury, and it is only where different minds can reasonably arrive at only one result that the fact issues become questions of law; and that even where there is a finding of negligence, proximate cause usually presents a jury issue.

The verdict as against Holand must stand since he has taken no appeal. It is irrelevant, however, that he does not quarrel with jury's finding since

Minnesota decisions follow the view that a defendant is not necessarily relieved of liability because the negligence of another person is also a contributing cause. Thus, the fact that the negligence of Holand was one of the proximate causes of the accident would not justify a directed verdict for Fagerholm if his conduct was negligent and such negligence was also a proximate cause of plaintiff's injuries. Fagerholm would not be absolved from responsibility merely because other causes, such as the negligence of other persons, contributed to the result. Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758.

Minn. St. 169.06, subd. 7, provides:

"When flashing red or yellow signals are used they shall require obedience by vehicular traffic, as follows:

"(1) When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked, and the right to proceed is subject to the rules applicable after making a stop at a stop sign;

"(2) When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past the signals only with caution."

Section 169.14 provides in part:

"Subdivision 1. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"Subd. 2. Where no special hazard exists the following speeds shall be lawful, but any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that the speed limit within any municipality shall be an absolute speed limit and any speed in excess therof shall be unlawful:

"(1) 30 miles per hour in any municipality;

\* \* \* \* \*

"Subd. 3. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

The court instructed with reference to the foregoing statutory provisions and also read § 169.20, subd. 3, which provides:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway.

"The driver of a vehicle shall likewise stop in obedience to a stop sign, as required herein, at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

■ In Godeen v. Bennett, 265 Minn. 179, 183, 120 N. W. (2d) 867, 870, we said:

"It is axiomatic that judgment notwithstanding the verdict may not be granted if there is room for a difference of opinion among reasonable persons as to whether negligence existed and whether it was a proximate cause of the collision. If, from the evidence, different inferences may be reasonably drawn, determination of the fact issue must be left to the jury. This principle is so well settled that it needs no citation of authority."

■ Since Holand has not appealed, the principal issue presented is whether the evidence supports the jury's verdict against Fagerholm. The finding of negligence on the part of Fagerholm may well have been predicated on excessive speed in entering the intersection; on failure to keep a proper lookout; or on failure to keep his car under control and to exer-

cise the caution required upon approaching a flashing yellow signal at a time when other vehicular traffic was about to enter the intersection from another direction.

The appellant places considerable reliance upon Bocchi v. Karnstedt, 238 Minn. 257, 56 N. W. (2d) 628. In that case, Bartlett was proceeding on a through street and assumed that Karnstedt, who was approaching on an intersecting street, would stop. When he did not, a collision occurred. The passenger in the Bartlett car sued both drivers and had a verdict against both. The only issue of negligence created against Bartlett was one of excessive speed, the prima facie speed limit for him being 30 miles per hour. Those who testified placed his speed within that limit. One witness, Bert Cole, testified that Bartlett at a point some 150 to 175 feet back from the collision was going 40 miles per hour. The trial judge granted Bartlett judgment notwithstanding the verdict stating (238 Minn. 262, 56 N. W. [2d] 632):

"The evidence as a whole overwhelmingly preponderates to show that defendant Karnstedt failed to stop his automobile before entering the arterial highway and that the accident was not due to negligence on the part of defendant Bartlett. The testimony of Bert Cole is incredible and unworthy of belief."

This court affirmed, pointing out that Mr. Cole's testimony related only to a point 150 to 175 feet back from the collision while all other witnesses put Bartlett's car at a lawful speed at all times. Similar facts are not presented by the record in the case at bar, and the Bocchi case is not controlling.

The statutes require the driver of any vehicle, consistent with the requirements, to drive at an appropriate reduced speed when approaching and crossing an intersection and when special hazards exist with respect to other traffic or by reason of weather or highway conditions. The statute requiring reduced speed at intersections bespeaks precaution, even from those having the right-of-way. Dose v. Yager, 231 Minn. 90, 42 N. W. (2d) 420.

The jury was not bound to accept Fagerholm's testimony as to speed. It had a right to take into account the character of the damage to the respective automobiles; how and where they came to a stop; and whether

Fagerholm was traveling at a required reduced speed at the time of the accident. A speed greater than is reasonable and proper under the circumstances would be unlawful. We have said that the right of a driver on a through highway to assume that a driver approaching on an intersecting highway will heed the stop sign is not absolute. In any event the jury might well have found that the surrounding circumstances in the case at bar would give notice to a person of ordinary prudence that the warning of the stop sign might be ignored, and if so the driver would be required to act accordingly and take appropriate precautions. Since he was approaching the rapid intermittent yellow flashes, the statute prescribes that he might proceed only with caution.

Fagerholm had observed the truck coming to his left when it was 50 to 75 feet south of the intersection. Under the circumstances it became his duty to thereafter keep a proper lookout and to exercise due care to avoid any impending collision. He failed to look again toward the oncoming truck until the passenger in the front seat shouted. Under the circumstances, revealed by Fagerholm's own testimony and that of his passengers, we are bound to conclude that he was aware of the truck for a sufficient time to avoid the collision. Had Fagerholm been driving at an appropriate reduced speed, had he kept a proper lookout, and had he kept control of his automobile, the collision could very likely have been averted. Under the circumstances the evidence as a whole reasonably tends to support a finding of negligence on the part of Fagerholm and that such negligence was a contributing proximate cause of the collision. See, Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31, and cases cited therein.

The right-of-way rule when applicable to an intersection must be applied in the light of all existing circumstances in each and every case where it is in effect. In Ballweber v. Kleist, 248 Minn. 102, 78 N. W. (2d) 671, we held that where a driver on the right failed to take precaution to look and observe the driver to the left until entering the intersection, or at best when within 2 or 3 feet from it, the question of whether he was negligent under the circumstances, and whether his negligence was a contributing and proximate cause of the accident, was for the jury. We also said in the Ballweber case that it is ordinarily a jury question as to whether a driver is justified in assuming that an approaching vehicle will stop or slow

down for him, and that where the physical facts are capable of having more than one interpretation and the testimony as to such facts is contradictory, the court should submit the issue to the jury as a question of fact.

Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372, and Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448, cited by appellant, are distinguishable on the facts. The ultimate findings of freedom from negligence in those cases were based not only on physical facts but also on overwhelming independent testimony. As we see it, after carefully considering the record herein, Fagerholm's assertion that he is free from negligence is not supported by either the physical facts or the independent testimony. We are not confronted with a situation where if one defendant is negligent the other is of necessity not negligent. On the contrary, the evidence as a whole supports the jury's finding that both defendants were negligent. As argued by Holand, the scrape marks along the front of the Fagerholm car, the damage to it, its eventual resting place, the lack of skid marks in connection with Fagerholm's car, and the one foot of Holand's skid marks, constitute physical evidence from which the jury might well find quite conclusively that Fagerholm proceeded blindly into the intersection without heeding the reduced-speed requirement and in fact collided with the truck because of his own negligence when the simple act of keeping his car under control and keeping a proper lookout would have avoided the accident. The record indicates that he ignored the danger from the truck approaching to his left until such time as a passenger called out a warning. Mr. Fagerholm's own testimony establishes negligence on his part, and this has been affirmed by the testimony of other witnesses who were passengers in his automobile.

The record presents ample evidence to support the jury's verdict. Where the question of the negligence of the drivers of the cars involved is properly for the jury's determination, as in the case at bar, the verdict should be upheld.

Affirmed.