JOHN W. PETERSON, TRUSTEE FOR NEXT OF KIN
OF CLARA E. PETERSON, AND ANOTHER v.
WILLIAM A. RODEKUHR AND ANOTHER,
d.b.a. RODEKUHR BROTHERS.

143 N. W. (2d) 226.

May 27, 1966—No. 39,904.

*Bradford & Kennedy,* for appellants.

*Edward R. Soshnik* and *Carroll, Cronan, Roth & Austin,* for respondents.

SHERAN, JUSTICE.

Appeal from an order denying plaintiff's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

This action arises out of a collision between a truck and an automobile on May 6, 1964, at about 9:30 a. m. at the rural intersection of Highway No. 29 and County Road No. 77 in Otter Tail County. Because of rain, the roads were wet and the sky cloudy.

Highway No. 29 is an arterial highway running generally east and west. It has a tarred surface 25 feet in width with a 4½-foot shoulder on each side. At its intersection with County Road No. 77 it is protected by stop signs.

County Road No. 77 has a gravel surface 23 feet in width and runs generally north and south.

Defendant, a man 74 years of age, was traveling south on County Road No. 77 in a 1947 two-ton truck, 22 or 23 feet in length. He reached and obeyed the stop sign located 20 feet north of the north edge of Highway No. 29. According to his testimony, he looked first to his right and then to his left observing no oncoming traffic in either direction. At this point his vision down Highway No. 29 to the right or west was unobstructed for at least 1,350 feet. He proceeded to the north edge of the highway and, without stopping, began to cross the 25-foot intersection at a speed he estimated to be 10 to 12 miles per hour, intending to continue in a southerly direction. He claimed that the 9- to 10-foot-long cab of his truck was fully across the south edge of the highway when he was struck by plaintiff's vehicle, which he did not see until immediately before impact. Defendant's truck came to rest with only about 3 feet of its back end still on the highway.

Plaintiff, a man 72 years of age, was driving a 1958 Chevrolet in an easterly direction on Highway No. 29. His wife was also present in the car. Although his view was unobstructed for 500 feet down County Road No. 77 to the north when he was still 300 feet west of the intersection, plaintiff testified that he was 100 feet from the intersection when he first saw defendant's vehicle. He testified that he was then traveling at a speed of 55 to 60 miles per hour and that the front end of defendant's truck was then 3 to 4 feet into the northern portion of Highway No. 29. Plaintiff applied his brakes and turned slightly south. His vehicle struck defendant's truck just behind the 9- or 10-foot-long cab. Skid marks from plaintiff's vehicle measured 30 feet, moving in a southeasterly direction in the eastbound lane of Highway No. 29.

Plaintiff brings this action for himself for property damage and as trustee for the next of kin of his wife, Clara E. Peterson, who died as a result of injuries sustained in this accident.

At the close of the evidence plaintiff moved for a directed verdict in his favor on the issue of defendant's negligence, which plaintiff claimed was established as a matter of law by defendant's failure to maintain a proper lookout and to yield the right-of-way. This motion was denied.

After the jury had retired, the court entertained objections by both parties to portions of the instructions. Plaintiff objected to the italicized portion of the following instruction on Minn. St. 169.20, subd. 3:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, *but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway.*" (Italics supplied.)

The case was submitted to the jury on a special verdict of four interrogatories. The jury found (1) that defendant was negligent and that such negligence proximately caused the accident; (2) that plaintiff was negligent and that such negligence proximately caused the accident; (3) that damages suffered by the next of kin of Clara E. Peterson as a result of her death are $10,000; and (4) that the damages suffered by plaintiff as a result of the accident are $1,151.82.

The determinative question on appeal is whether there was sufficient evidence to support a finding that plaintiff's vehicle did *not* constitute an "immediate hazard" to the defendant at the time the latter entered the intersection. If there is, the trial court properly submitted the right-of-way question to the jury. If there is not, the trial court erred in submitting the right-of-way question to the jury and in failing to rule as a matter of law that plaintiff retained the benefit of the right-of-way accorded by § 169.20, subd. 3, to drivers on a through highway and that defendant was negligent in failing to yield the right-of-way to plaintiff.

It is noted that no matter how the right-of-way question is resolved, there is sufficient evidence to support a finding of negligence against each party on the theory of improper lookout. A driver enjoying the right-of-

way is not excused from his obligation to maintain a proper lookout.[1] However, as to plaintiff's negligence, since it is impossible to tell from the verdict whether the jury based its decision upon the theory of improper lookout or upon the theory that plaintiff had lost the right-of-way and was negligent in failing to yield, we must review the sufficiency of the evidence on the right-of-way question.[2]

The review of this question focuses upon the conduct of the parties and their respective positions at the time that the defendant entered the intersection. The duty to yield the right-of-way is determined as of that time and not as of the time that defendant was stopped 20 feet back from the intersection.[3]

There is no direct evidence here of the distance separating the parties at the time defendant entered the intersection. Apparently defendant did not look to the west after leaving the stop sign until immediately before impact. Plaintiff did not see the defendant enter the intersection. There were no other witnesses to the accident.

However, the jury could have determined the distances at the relevant time inferentially from the circumstantial evidence. This evidence shows that the defendant, at the time he was 20 feet from the edge of the highway, looked west; had an unobstructed view for 1,350 feet; and saw no vehicles. While the evidence does not tell us how long defendant remained stopped, or how long it took him to cover the distance of 20 feet to the highway, the jury could have inferred from these facts that plaintiff's vehicle was still a substantial distance from the intersection at the time defendant entered it. This conclusion could be reinforced by the

---

[1] See, Nelson v. Holand, 272 Minn. 522, 139 N. W. (2d) 518; Ballweber v. Kleist, 248 Minn. 102, 78 N. W. (2d) 671.

[2] When two or more theories of negligence are submitted to the jury and there is insufficient evidence to support a finding of negligence based upon one of them, a new trial is required if it is impossible to tell from the verdict which theory was the basis of decision. Ohrmann v. Chicago & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806; Namchek v. Tulley, 259 Minn. 469, 107 N. W. (2d) 856.

[3] See, Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85, 66 A. L. R. (2d) 1178.

fact that the cab of defendant's truck, some 9 to 10 feet in length, had entirely passed the south edge of the highway at the time of impact; that, as shown both by the skid marks and plaintiff's own testimony, plaintiff did not attempt to slow his vehicle until within 100 feet of the intersection and the vehicle was probably not slowed at all until the last 30 feet; and that the impact occurred at the southern edge of the eastbound lane of the highway, but still was at the center or rear of center on the truck, which came to rest with only 3 feet of the back end remaining on the highway.

Both parties have attempted to demonstrate the conclusiveness of their positions by mathematical computations based upon estimates of speed and distances. For example, it is said that if defendant had traveled the entire distance from the sign to impact at a speed estimated by him to be 10 to 12 miles per hour, the time it would take him would be about 3 seconds. In order for the plaintiff to reach the point of impact in that same time at 60 miles per hour, he could not have been more than 270 feet from the intersection when defendant left the stop sign. While demonstrative, these arguments cannot control our decision since they are based upon estimates that the jury was not bound to accept. The jury was not required to find that the defendant traveled the entire distance from sign to impact at 10 to 12 miles per hour. Having in mind that the defendant was driving a 17-year-old truck, the jury could have found that a considerable part of this distance would be passed before the truck would reach the speed of 10 miles per hour.

Viewing the evidence in the light most favorable to the defendant, we hold that it was sufficient to support a finding that the plaintiff did not constitute an immediate hazard at the time the defendant entered the intersection.

While comparisons with other cases are not particularly helpful in deciding this question, Satter v. Turner, *supra,* is probably the most comparable factually and is consistent with the result rendered here. In that case both drivers claimed to be entitled to the right-of-way as a matter of law. The evidence showed that defendant Zak stopped at a stop sign located 32 feet west of a through highway. From this point he looked

south and saw defendant Turner at a distance he estimated to be 500 to 600 feet. He proceeded to the highway and, without looking or stopping again, entered the intersection and turned into Turner's lane. Turner, without reducing her speed, veered to pass Zak and collided with another vehicle coming in the opposite direction. We held that the trial court properly submitted the right-of-way question to the jury since, on this evidence, it could have resolved that question either way. We said that it was for the jury to say where the Turner car was when Zak entered the intersection.[4]

Plaintiff places some reliance upon the statement appearing in some of our cases to the effect that the fact "[t]hat plaintiff's automobile was so close as to constitute an immediate hazard is established by the event of the accident." [5] It is clear from a reading of those cases that the statement does not mean that the event of the accident establishes the immediacy of the hazard as a matter of law. The Schleuder case itself held that the right-of-way question was properly submitted to the jury. In light of this and the several other cases holding that the right-of-way question was for the jury,[6] the statement can only mean that the event of the accident tends to prove, but does not prove as a matter of law, that the plaintiff's vehicle was an immediate hazard.

Affirmed.

OTIS, JUSTICE (concurring specially).

I concur in the opinion of Mr. Justice Sheran. However, I do not believe we can ignore the manifest impropriety of the court's appointing a trustee who has such an obvious conflict of interest as plaintiff in this case.

Here, as trustee for two other beneficiaries, it was clearly his duty to sue both drivers. Since in the instant case plaintiff was himself one of the

---

[4] See, also, Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. (2d) 205; Mocuik v. Svoboda, 253 Minn. 562, 93 N. W. (2d) 547.

[5] Schleuder v. Soltow, 239 Minn. 453, 460, 59 N. W. (2d) 320, 325; Zickrick v. Strathern, 211 Minn. 329, 1 N. W. (2d) 134.

[6] See, Satter v. Turner, *supra;* Tollefson v. Ehlers, *supra;* Mocuik v. Svoboda, *supra.*

drivers, he is in the indefensible position of having to pass judgment on his own liability which is a decision he can hardly make with any degree of objectivity.