RALPH ROD v. DALE L. JEFFORDS AND ANOTHER.
WESTFALL W. MARKWOOD, ADDITIONAL DEFENDANT.
WESTFALL W. MARKWOOD v. SAME.[1]

January 9, 1953.

Nos. 35,856, 35,857.

*Ernest A. Rich,* for appellant.

*Hvass, Weisman, Peterson & King* and *Fred A. Ossanna,* for respondent Rod.

*Sexton, Tyrrell & Jardine,* for respondents Jeffords and Chock.

[1]Reported in 56 N. W. (2d) 638.

MAGNEY, JUSTICE.

State highway No. 7 in Hennepin county at the place of the accident runs east and west, and county highway No. 73 runs north and south. This direction designation is not exactly correct but serves our present purposes. The highways intersect at approximately right angles.

On May 14, 1950, plaintiff Ralph Rod was a passenger in an automobile owned and operated by one Westfall W. Markwood. This car and one owned by defendant Method Chock and operated by defendant Dale L. Jeffords collided in the above-mentioned intersection. Plaintiff was injured. He brought an action against Jeffords and Chock in which Markwood was brought in as an additional defendant. Markwood brought an action against Jeffords and Chock to recover for injuries received and damages to his car. The actions were consolidated for trial. In the first action, plaintiff recovered a verdict against all three defendants. In the second action, there was a verdict for the defendants. In each case Markwood appeals from an order denying his motion for a new trial. Defendants Jeffords and Chock made no after-trial motions.

State highway No. 7 is a four-lane paved road 60 feet in width. County highway No. 73 is black-topped, 40 feet in width. Twelve feet north of the pavement of No. 7 on No. 73 is a stop sign. To the west of the intersection No. 7 is straight for several hundred feet.

In considering the facts, a view of the evidence most favorable to the verdict must, of course, be taken.

May 14, 1950, was Sunday, and the holiday traffic was quite heavy. At about 1:45 p. m., Rod was a passenger in the Markwood car coming south on No. 73. As Markwood approached No. 7, he stopped 10 or 12 feet from the pavement on No. 7 at the stop sign. As the traffic was very heavy on the intersecting road, he remained stopped for two or more minutes. When he started up, he saw no traffic on No. 7 except one car coming from the west approaching in the most southerly lane and, according to Markwood, about 400 to 500 feet away. Jeffords who was driving the Chock car testified

that, when he, Jeffords, was about 150 to 200 feet from the intersection, he saw the Markwood car stopped at the stop sign and, when 125 feet away, he saw Markwood pull away from the stop sign. Chock who was riding in the front seat of his car said that when he first saw the Markwood car it was proceeding very slowly with its front end at about the north edge of No. 7. Chock was then 150 feet from the intersection. We must therefore take it as a fact that when Markwood was about to enter upon No. 7, the Chock car was 125 to 150 feet from the intersection.

To fully clear the intersection, the Markwood car would have to travel about 75 feet. When Chock and Jeffords saw Markwood, they were traveling at about 45 miles per hour. Markwood testified that when he first saw the Chock car it had that speed. When Jeffords saw Markwood start up, he took his foot off the accelerator to slow down as he was anticipating Markwood would cross the intersection. His judgment was that, with the accelerating speed of the Markwood car and the speed of his own car, the vehicles would avoid each other in the intersection. "I thought he was going to get across, and he didn't make it * * *." The Chock car slowed down to about 35 miles per hour. When it appeared to Jeffords that there might be a collision, he put on his brakes, and the car skidded 70 feet to where the debris from the collision was found and a further distance of 21 feet to where it came to rest. The front end of the Chock car struck the right rear portion of the Markwood car.

After the collision, the Chock car was on the southeast corner of the intersection facing in a southwesterly direction with its front portion on No. 73 and the rear portion on No. 7. The Markwood car stopped on No. 73, about 20 feet off No. 7 on the east side of the highway and facing east.

Markwood's car was equipped with a standard shift. He said that he started up from the stop sign in low gear and later shifted into second and that, as he started up, he saw the Chock car coming east in the most southerly lane. He did not see it again until Rod said: "Here they come." Rod testified that the Chock car was then 45 to 60 feet away. At that time Markwood's entire car had cleared

290 the center of No. 7, and was traveling at 15 to 18 miles per hour according to Markwood. According to Chock, Markwood was driving at a speed of 10 to 15 miles an hour at the time of the impact. The Chock car had then slowed down from 45 to about 15 miles an hour. When hit, the front wheels of the Markwood car were just off the pavement. If he had proceeded 12 or 15 feet farther, he would have cleared No. 7. The Markwood car traveled about 8 to 10 feet from the time Rod spoke until the impact took place. Markwood said that, as he was crossing the intersection, he was watching his own machine—"handling my own machine straight ahead." He said: "I watched straight ahead. That's where I was headed for. * * * I couldn't watch it [the Chock car] because I was watching my own car, the operation of my own car."

The court submitted the question of Markwood's negligence to the jury in the Rod case, and his contributory negligence, in the Markwood case. The jury found he was negligent.

Among other assignments of error, Markwood insists that the court erred in submitting to the jury the question of whether the Chock car was so close to the intersection as to constitute an immediate hazard when appellant entered it. He claims he was free from negligence as a matter of law.

The statute involved is M. S. A. 169.20, subd. 3, which reads:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

The court read this statute to the jury and then said:

"* * * The gist of the whole situation is that part which says that they may enter such a highway when there is no other cars ap-

proaching so closely as to constitute an immediate hazard. * * * One may enter such an intersection after having stopped and made a proper look, if at the time of so entering there is no car close enough so as to constitute an immediate hazard."

Markwood argues that, at the time he entered the intersection, the Chock car was so far away to his right, namely 400 to 450 feet, that it was not close enough to constitute an immediate hazard. He bases his whole argument on his claimed distance. However, the testimony of Jeffords and Chock, that the Chock car was about 125 to 150 feet from the intersection when Markwood entered, is the evidence most favorable to the verdict and that which we must accept. The Chock car was then traveling 40 to 45 miles an hour. The only fixed distances are the width of No. 7 and the distance from the stop sign to the intersection. The other distances testified to are all estimates. The same is true of the testimony as to speeds. As to those matters there is no mathematical certainty. We are of the opinion, on the evidence as we have detailed it, that the court was right in submitting to the jury the question of Markwood's negligence and contributory negligence. The Chock car, at the time Markwood entered the intersection, was traveling at such speed and so close to the intersection that the jury could well say that it was so close as to constitute an immediate hazard. Zickrick v. Strathern, 211 Minn. 329, 1 N. W. (2d) 134; Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66; Bohnen v. Gorr, 234 Minn. 71, 47 N. W. (2d) 459. See, also, Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; Webber v. Seymour, 236 Minn. 10, 51 N. W. (2d) 825.

The very fact of the collision itself, under the evidence here, strongly supports the finding that the Chock car was so close to the intersection as to constitute an immediate hazard.

Orders affirmed.