MINNIE B. NEAL v. PAUL W. NEAL AND ANOTHER.
ROBERT W. STELTER, RESPONDENT.[1]

January 16, 1953.

No. 35,761.

[1]Reported in 56 N. W. (2d) 673.

*Sheldon D. Karlins, Alan L. Stiegler,* and *Sachs, Karlins, Grossman & Karlins,* for appellant.

*Hall & Forbes,* for respondent Neal.

*English & Velta* and *Robert M. Baker,* for respondent Stelter.

CHRISTIANSON, JUSTICE.

This is a personal injury action arising out of a collision between an automobile owned and operated by defendant Paul W. Neal in which plaintiff, defendant Neal's mother, was a passenger and an automobile owned and operated by defendant Robert W. Stelter. Plaintiff had a verdict against both defendants. From an order denying his alternative motion for judgment or a new trial, defendant Neal appeals.

The collision occurred on November 16, 1950, at approximately 2 p. m., at the intersection of county roads Nos. 26 and 39 in Yellow Medicine county. County road No. 26 runs generally east and west and is intersected at right angles by county road No. 39 running north and south. Prior to the collision the Neal car, a 1948 Kaiser, was traveling west on county road No. 26 and the Stelter car, a 1949 Buick sedan, was proceeding north on county road No. 39.

County roads Nos. 26 and 39 are straight, level roads surfaced with gravel and are both 20 feet wide in the vicinity of the collision. There is a stop sign on county road No. 39 located about 100 feet south of the intersection. The view of a driver approaching the

intersection on either road is unobstructed for at least 600 feet to the east and to the south.

It had been snowing in the forenoon, but it was clear and the sun was shining at the time of the collision. The roads were generally in good condition and were free from snow except along the edges of the roads. The condition of county road No. 39 immediately south of the intersection is disputed. This area will be subsequently considered. Both drivers testified that they were familiar with the intersection and knew of the stop sign on county road No. 39.

Defendant Neal testified that he was driving west on county road No. 26 at a speed of 40 to 45 miles per hour. At a point approximately 600 feet east of the intersection, he looked in each direction but did not see defendant Stelter's car. As he approached the intersection from this point he reduced his speed to 25 to 30 miles per hour. At a point approximately 30 feet east of the intersection, he observed defendant Stelter's car slightly over 100 feet south of the intersection on county road No. 39 traveling at a speed of approximately 30 miles per hour. Since he assumed that Stelter was going to stop, he did not apply his brakes or turn his vehicle. His next recollection was the collision of the front of the Stelter car with the left side of his car at a point just a little north and west of the center of the intersection.

Defendant Stelter testified that he was driving north on county road No. 39 at a speed of about 40 miles per hour. At a point 300 to 400 feet south of the intersection, he began to reduce his speed so that, when he was 20 to 30 feet from the intersection, he was traveling at a speed of 20 miles per hour. At this point, he first saw defendant Neal's car 60 to 80 feet to his right. He estimated that it was coming at a speed of 50 to 60 miles per hour. He immediately applied his brakes, but because of packed snow he was unable to stop and skidded into the intersection. Defendant Neal and the sheriff of Yellow Medicine county, however, both denied the existence of any patches of snow at the intersection or immediately south thereof on county road No. 39. Stelter placed the point of impact just a little east and south of the center of the intersection.

He stated that his car had almost stopped when the left front of the Neal car collided with the right side of his car just behind the front wheel. He testified that he had a conversation with defendant Neal immediately after the accident wherein defendant Neal stated that he did not know that there was a stop sign on county road No. 39 and that he had not seen defendant Stelter because the sun was shining in his eyes. Defendant Neal denied making such statements.

■ On appeal defendant Neal contends that the evidence was insufficient to support the verdict against him. He argues on the basis of three prior Minnesota cases[2] that proper lookout, in an intersection case such as this, is a subjective concept and that, since there was no evidence that Neal was aware of Stelter's probable inability to stop, he was entitled to a directed verdict. It is true that this court in reaching a proper result in each of the cited cases seemed to approve the use of a subjective standard of lookout as applied to this type of intersection case where the driver in question had the right of way. But the inadvertent language appearing in these opinions was subsequently corrected in Dose v. Yager, 231 Minn. 90, 98, 42 N. W. (2d) 420, 426, where this court approved an instruction to the effect that the driver upon a highway which he knows to be protected by a stop sign may assume, until he sees *or should see otherwise*, that a driver approaching the intersection will respect the right of way of other vehicles which are approaching so closely on the protected highway as to constitute an immediate hazard. In doing so, the court stated:

"* * * In any event, the jury might well have found that the surrounding circumstances would give notice to a person of ordinary prudence that the warning of the stop sign might be ignored. If so, the driver should act accordingly and take appropriate precautions."

[2]Pearson v. Norell, 198 Minn. 303, 269 N. W. 643; Duffey v. Curtis, 193 Minn. 358, 258 N. W. 744; Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66.

Appellant contends that Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66, is controlling in his favor. In that case, this court held the driver on the arterial highway to be free from negligence as a matter of law where he approached and entered a blind intersection at a speed of 45 or 50 miles per hour and attempted to stop and avoid the collision immediately upon seeing the other car which failed to stop for the stop sign. The case at bar is clearly distinguishable. In the Olson case, there was no question as to lookout. It was conceded that the offending driver's car was seen as soon as it was possible to see it. Moreover, there, the driver on the arterial highway had neither the time nor space within which to avoid the collision. In the instant case, the failure to keep proper lookout is in issue. Furthermore, as hereinafter pointed out, taking the view of the evidence most favorable to the verdict, a jury could find that defendant Neal had both the time and space within which to avoid the collision.

Appellant contends that a reasonable man would not have observed Stelter's probable inability to stop prior to the collision. Looking at the facts most favorable to the verdict and bearing in mind that there was no other traffic and that defendant Neal testified he was traveling only 25 to 30 miles per hour, although defendant Stelter estimated his speed to be between 50 to 60 miles per hour, it would not be unreasonable for a jury to find that had Neal been keeping a proper lookout he would have realized the difficulty Stelter was in when the Stelter car was at least 25 feet from the intersection as it began to slide on the packed snow, assuming its existence.

Appellant then argues that there is no evidence to support the finding of proximate cause. Again viewing the evidence most favorable to the verdict the jury could find that Neal was about 70 feet from the intersection when he should have realized that Stelter was probably going to be unable to stop, that Neal was then traveling only 25 to 30 miles per hour, that the collision occurred just south and east of the center of the intersection, and that Stelter's car was almost stopped at the point of impact. Under such circum-

stances the jury could find that, if Neal had kept a proper lookout, notwithstanding the emergency confronting him, he should, in the exercise of reasonable care, have applied his brakes and turned his car to the right so as to avoid the impending collision. Cf. Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31; Katlaba v. Pfeifer, 238 Minn. 298, 56 N. W. (2d) 725.

There was evidence on the other hand which, if believed, would have permitted the jury to find that Neal did maintain a proper lookout and that there was no reason for him to believe that the Stelter car was not going to stop until it was too late to avoid the collision. Although the question of Neal's negligence is close, it was for the jury to choose between the conflicting inferences reasonably to be drawn from the evidence.

■ Appellant's final contention is that it was reversible error for the trial court to instruct the jury that the reduced-speed statute[3] was applicable *if before entering the intersection defendant Neal saw Stelter's car.* Appellant contends that the jury should have been instructed that the reduced-speed statute was applicable only after Neal reasonably should have seen that the Stelter car was not going to stop.

In an arterial highway intersection case such as this, where the speed of the driver on the arterial highway is prima facie lawful under § 169.14, subd. 2, and where the application of the reduced-speed statute is predicated solely upon the presence of an intersection and none of the other factors specifically enumerated in § 169.14, subd. 3, are present, to hold that the reduced-speed statute requires the driver on the arterial highway to always reduce his speed when approaching and crossing an intersection protected by stop signs would be both unreasonable and impractical. Such an

---

[3] M. S. A. 169.14, subd. 3, which provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

intent should not be ascribed to the legislature. See, § 645,17(1).

We therefore conclude that the reduced-speed statute was not applicable to defendant Neal until such time as he reasonably should have seen that the Stelter car was not going to stop and that danger was imminent unless he reduced his speed. Since appellant's counsel pointed out the basis for his objection to the instruction in question both before and at the conclusion of the court's charge, the failure on the part of the trial court to properly qualify the instruction relating to the reduced-speed statute was reversible error, and defendant Neal therefore is entitled to a new trial.

Reversed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

