348 F.2d 252
 Keith LOWERY, d/b/a Lowery Trucking Co., and Leonard Anderson, Appellants,
v.
Elaine CLOUSE, a Minor, by Vincent Clouse, Her Father and Natural Guardian, Jerome Clouse, a Minor, by Vincent Clouse, His Father and Natural Guardian, and Vincent Clouse, Appellees.
 No. 17808.
 United States Court of Appeals Eighth Circuit.
 July 16, 1965.
 
 COPYRIGHT MATERIAL OMITTED Sheldon J. Gensler, of Schermer & Gensler, Minneapolis, Minn., for appellants.
 David A. Bailly, of Cragg & Barnett, Minneapolis, Minn., for appellees Jerome and Vincent Clouse.
 Joe E. Thompson, of Johnson, Schmidt & Thompson, Willmar, Minn., for appellees Elaine Clouse and Vincent Clouse.
 Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.
 BLACKMUN, Circuit Judge.
 
 
 1
 This diversity litigation arises from a motor vehicle accident which occurred shortly before dawn on December 21, 1962, at an intersection in Kandiyohi County, Minnesota. The jury trial resulted in verdicts against the defendants Lowery and Anderson of $32,300 in favor of Elaine Clouse, of $3,000 in favor of her brother Jerome Clouse, and of smaller amounts in favor of their father, Vincent, and in a verdict adverse to the defendants on their third-party cause of action against Jerome and Vincent.
 
 
 2
 The issues raised on appeal relate to the trial court's instructions. Accordingly, the facts are not in serious dispute.
 
 
 3
 The intersection is that of U. S. Highway 71, running north and south, and Minnesota Highway 7, running east and west. Jerome was permissively driving his father's Ford automobile north on the federal highway. Elaine and Constance Lindquist, a high school student, were his passengers. All three were minors. Anderson was driving a trailer-tractor unit, owned by Lowery, east on Highway 7. The two vehicles collided, with the Ford hitting the tractor about three yards back from its front end. Constance was killed in the accident and Elaine and Jerome were injured. The Ford and the semi were damaged.
 
 
 4
 The collision took place at 7:30 a. m. The sun rose there that day at 7:55 a. m.
 
 
 5
 Elaine and Jerome instituted separate suits against the defendants jointly and each was joined by Vincent. By leave of court the defendants filed their third-party complaint in Elaine's case against Jerome and Vincent, claiming contribution as to any judgment which Elaine and Vincent might obtain. The suits were consolidated for trial.
 
 
 6
 At the intersection U.S. 71 is concrete and Minnesota 7 is bituminous. Both are two-lane and level. There are stop signs on the state highway. Overhanging the intersection is a traffic light flashing red for the east-west traffic on Minnesota 7 and flashing yellow for the north-south traffic on U.S. 71. Truckstop service stations are on the northwest and southwest corners of the intersection but the view of approaching motorists is unobstructed.
 
 
 7
 Anderson had stopped for coffee at the station on the south-west corner. He pulled out from its premises and onto Minnesota 7. His truck-trailer was more than 50 feet long and, with its load, weighed over 71,000 pounds. His head and clearance lights were on. There were three amber lights at each front top corner and at the center of the bottom of the trailer; all these were lit. Anderson testified that he stopped at the stop sign and then proceeded across the intersection in first gear at between two and three miles per hour; that when he was in the middle of the intersection he saw the Clouse car for the first time; that it was then about 100 feet away; and that "It wasn't really light and it wasn't really dark. It was just kind of in between. You could see a ways". Anderson's co-driver also testified as to their stop at the stop sign. Jerome testified that he was familiar with the intersection and its traffic controls; that he was aware that heavy trucks crossed there; that visibility was good; that there was nothing obstructing his view of Highway 7; that he was driving between 45 and 50 miles per hour; that he first saw the truck when it was proceeding slowly east toward the stop sign; that the truck had its lights on; that he did not see whether the truck stopped at the stop sign; that "I figured the truck was going to stop"; that he started to decelerate some 400 feet before he reached the intersection; and that he was 40 to 50 feet from the semi when he applied his brakes. There was other testimony as to the absence of any sound of air brakes on the semi and to the effect that the skid marks from the Ford extended for about 90 feet; that after the collision the front of the tractor was east of U.S. 71 and on Minnesota 7; that the rear of the trailer was west of the federal highway; and that the Clouse car was going about 65 miles per hour.
 
 
 8
 The case was submitted to the jury on special verdict by agreement of counsel and as permitted by Rule 49(a), F.R. Civ.P. The questions and the jury's answers were:
 
 
 9
 1. Was the defendant Anderson negligent? Yes.
 
 
 10
 2. If the defendant Anderson was negligent, was his negligence a proximate cause of the accident and the injuries and damages complained of? Yes.
 
 
 11
 3. Was plaintiff Jerome Clouse negligent? No.
 
 
 12
 4. If plaintiff Jerome Clouse was negligent, was his negligence a proximate cause of the accident and the injuries and damages complained of? No.
 
 
 13
 5. The damages of Elaine Clouse are Thirty-Two Thousand Three Hundred Dollars ($32,300.00).
 
 
 14
 6. The damages of Vincent Clouse because of Elaine's injuries are Twelve Hundred Dollars ($1200.00).
 
 
 15
 7. The damages of Jerome Clouse are Three Thousand Dollars ($3,000.00).
 
 
 16
 8. The damages of Vincent Clouse because of Jerome's injuries are Five Hundred Dollars ($500.00).
 
 
 17
 Judgments were entered accordingly except that the amounts in favor of Vincent were corrected, as the parties agreed, to conform with the evidence.
 
 
 18
 The defendants urge here that the trial court erred (1) in refusing to submit to the jury the Minnesota reduced speed statute, Minn.Stat.Ann. § 169.14, subd. 3; (2) in refusing to amplify its amber light instruction; and (3) in giving instructions which permitted the jury to determine the effect of their answers upon the ultimate liability of the parties.
 
 
 19
 Elaine's judgment. We note initially that the judgment in favor of Elaine must stand in any event. Elaine was a passenger. No question of contributory negligence on her part is presented and contributory negligence on Jerome's part, if such were determined to exist, is not imputable to her either at common law or under the Minnesota Safety Responsibility Act, Minn.Stat.Ann. § 170.54.[1] Jacobsen v. Dailey, 228 Minn. 201, 36 N.W.2d 711, 11 A.L.R.2d 1429 (1949); Christensen v. Hennepin Transp. Co., 215 Minn. 394, 10 N.W.2d 406, 413, 418-419, 147 A.L.R. 945 (1943); Olson v. Kennedy Trading Co., 199 Minn. 493, 272 N.W. 381, 383 (1937). There is no contention, therefore, that Elaine is barred from recovery. The only suggestion is that the amount of her judgment is excessive. This court, however, has stated clearly that excessiveness of a verdict is a matter basically for the trial court and that we interfere only in those rare situations where there is plain injustice or a monstrous or shocking result. Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 446-448 (8 Cir. 1961), cert. denied 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192; Bankers Life & Cas. Co. v. Kirtley, 307 F.2d 418, 423 (8 Cir. 1962). Elaine at the time of the accident was a young woman about 20 and received severe and permanent injuries. The amount of the verdict was carefully assessed by the trial court in response to the defense motion for a new trial. We find nothing here which warrants our interference with that verdict on the standards announced in the Solomon case. Neither do we find anything which leads us to conclude that Elaine's verdict is not appropriately severable or is so intertwined with Jerome's case that basic fairness would require that it stand or fall only with his. Rule 59(a), F.R.Civ.P.; Somerville v. Capital Transit Co., 89 U.S.App. D.C. 343, 192 F.2d 413, 415 (1951), cert. denied 342 U.S. 941, 72 S.Ct. 553, 96 L.Ed. 700; 6 Moore, Federal Practice, Par. 59.06, p. 3761 (2d Ed. 1953); 3 Barron & Holtzoff, Federal Practice & Procedure, § 1307, p. 384 (Wright Rev. 1958). See Constitution Publishing Co. v. Dale, 164 F.2d 210, 214 (5 Cir. 1947); Romer v. Baldwin, 317 F.2d 919, 922-923 (3 Cir. 1963). Elaine's judgment therefore is to remain irrespective of the conclusion we reach in the companion cases.
 
 
 20
 The reduced speed statute. The Minnesota statute, § 169.14, as it read at the time of the accident,[2] provides a "basic rule" of prudence. It specifies speeds which are lawful "where no special hazard exists" and then calls for "an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions". Closely related is the right-of-way statute, § 169.20, subd. 3, relating to a stop sign at a through highway.[3]
 
 
 21
 The defendants asked the trial court to submit to the jury, along with other statutes, the third subdivision of § 169.14 and the portion we have quoted of § 169.20. The latter was submitted but the former was refused. The theory upon which the defense rests its claim of error is that a jury question as to the existence of special hazards, within the reach of § 169.14, subd. 3, was present; that this is so because of the traffic, weather, and highway conditions, and the amber warning light at the intersection; and that if the jury found the statute violated by Jerome, any right of way he may have had was forfeited under § 169.20, subd. 1.
 
 
 22
 This necessitates a review of the pertinent Minnesota cases.
 
 
 23
 The bare fact that a driver is on a through highway does not prevent the application to him of the Minnesota reduced speed statute in appropriate circumstances. Norton v. Nelson, 236 Minn. 237, 53 N.W.2d 31, 34, 36 (1952); Kolatz v. Kelly, 244 Minn. 163, 69 N.W.2d 649, 655 (1955); Mocuik v. Svoboda, 253 Minn. 562, 93 N.W.2d 547, 552 (1958); Cherry v. Stedman, 259 F.2d 774, 776 (8 Cir. 1958). It has been said that the statute "bespeaks precaution, even from those having the right of way", Dose v. Yager, 231 Minn. 90, 42 N.W.2d 420, 426 (1950); Norton v. Nelson, supra, p. 35 of 53 N.W.2d; Adelmann v. Elk River Lumber Co., 242 Minn. 388, 65 N.W.2d 661, 664 (1964), and that travel at a speed which is unlawful results in loss of the right of way and of the right otherwise to assume that a driver approaching on an intersecting highway will heed a stop sign. Dose v. Yager, supra, p. 426 of 42 N.W.2d; Norton v. Nelson, supra, p. 35 of 53 N.W.2d; Kolatz v. Kelly, supra, p. 655 of 69 N.W.2d.
 
 
 24
 However, the driver on the through highway who is traveling at a speed which is prima facie lawful "may assume, until he sees otherwise, that drivers approaching an intersection so protected will heed the stop sign. * * * In short, he may assume ordinary care on the part of such drivers until he observes the contrary", Olson v. Anderson, 224 Minn. 216, 28 N.W.2d 66, 68 (1947), and
 
 
 25
 "* * * need not reduce his speed while approaching and passing over intersections along the through highway protected by stop signs where no special hazard exists other than an automobile approaching the intersection or stopped at it in obedience to a stop sign, provided that the driver of the automobile on the through highway is so close to the intersection as to constitute an immediate hazard to the automobile on the intersecting highway and provided further that the driver of the automobile on the through highway does not have reason to know that the driver on the intersecting highway is not going to obey the statute and yield the right of way to him. Likewise, drivers of vehicles on intersecting highways approaching the intersections of through highways protected by stop signs must anticipate that automobiles being driven upon through highways may approach and pass through intersections along the through highways at 60 miles an hour in the daytime where no special hazard exists without subjecting their drivers to a charge of negligence." Schleuder v. Soltow, 239 Minn. 453, 59 N.W.2d 320, 324 (1953).
 
 
 26
 Tollefson v. Ehlers, 252 Minn. 370, 90 N.W.2d 205, 208 (1958) and Mocuik v. Svoboda, supra, p. 551 of 93 N.W.2d, quote this language with approval. See Dahling v. Dammann, 251 Minn. 171, 87 N.W.2d 25, 29 (1957). And where the application of the statute is predicated solely upon the presence of an intersection and none of the other factors enumerated in the statute are present, it would be "both unreasonable and impractical" to hold that the statute requires the arterial driver always to reduce speed at a protected intersection. Neal v. Neal, 238 Minn. 292, 56 N.W.2d 673, 677 (1953); Mocuik v. Svoboda, supra, p. 551 of 93 N.W.2d; Schlukebier v. La Clair, 268 Minn. 64, 127 N.W.2d 693, 696 (1964). Thus, under such circumstances, the arterial driver need not reduce his otherwise lawful speed "for the statute does not contemplate such reduced speed on through highways, providing none of the other factors specifically enumerated in § 169.14, subd. 3, are present". Schleuder v. Soltow, supra, p. 324 of 59 N.W.2d.
 
 
 27
 The Schleuder case, p. 323 of 59 N.W.2d, also describes the duties of the intersecting driver. He should stop before entering the intersection, yield to vehicles which have entered it from the through highway and to others approaching the intersection "so closely as to constitute an immediate hazard", and only then proceed. Also, where the intersecting driver has come to a full stop, "this in itself is an invitation to drivers approaching the intersection on the through highway so closely as to constitute an immediate hazard to proceed on through the intersection". Kolatz v. Kelly, supra, p. 656 of 69 N.W.2d, emphasizes this invitational aspect.
 
 
 28
 The Minnesota court has struggled with "the problem raised by an indiscriminate reading of" traffic statutes to the jury. Tollefson v. Ehlers, supra, p. 209 of 90 N.W.2d. There are cases where the submission of the reduced speed statute has been held not to be error, Tollefson v. Ehlers, supra, p. 210 of 90 N.W. 2d; Mocuik v. Svoboda, supra, p. 552 of 93 N.W.2d; Koenigs v. Werner, 269 Minn. 530, 134 N.W.2d 301, 303 (1964); Staloch v. Belsaas, Minn., 136 N.W.2d 92 (1965), see Rod v. Jeffords, 238 Minn. 287, 56 N.W.2d 638, 640 (1953), and there is at least one case where the instruction has been held to be error, Neal v. Neal, supra, p. 677 of 56 N.W.2d. Correspondingly, the failure to submit the statute has been held not to be error, Schleuder v. Soltow, supra, p. 326 of 59 N.W.2d; Schlukebier v. La Clair, supra, p. 696 of 127 N.W.2d, and to constitute error, Adelmann v. Elk River Lumber Co., supra, pp. 664-665 of 65 N.W.2d. The distinction of course depends on the facts.
 
 
 29
 The reduced speed statute in connection with one's approach to an intersection relates to "special hazards" with respect to pedestrians, other traffic, "or by reason of weather or highway conditions". Here no pedestrian was involved. There was no precipitation. The intersection was open. The view of both drivers was unobstructed. The highways were not wet or snow covered. There was no evidence of substance indicating that the roads were not in good driving condition. There was evidence that visibility was good for 1000 feet. The accident took place within a half hour before sunrise and thus, for what it is worth, was in the "daytime", as defined in § 169.14, subd. 2. This leaves, for the application of the statute, only "other traffic" and "highway conditions" as such relate to traffic.
 
 
 30
 The defense's stress on Jerome's familiarity with the intersection and his awareness that heavy trucks crossed there is of no persuasive significance. What is significant is the condition of traffic at the time. That condition, so far as Jerome was concerned, was that one semi was approaching the protected intersection from the west.
 
 
 31
 The situation here comes down, we feel, essentially to that presented in Schleuder v. Soltow, supra. There the defendant, who was approaching an arterial highway, brought his automobile to a stop at or near the stop sign. He saw the plaintiff's and still another automobile approaching from his left and saw the plaintiff overtake and pass the other. He proceeded to enter the intersection. A collision occurred when the front part of the defendant's automobile was at least nearly across the traveled portion of the trunk highway. The Minnesota court held that the defendant "was not permitted to take a close chance" and that, under the circumstances, the denial of a request to submit the reduced speed statute to the jury was correct. That case controls this one. Adelmann v. Elk River Lumber Co., supra, 242 Minn. 388, 65 N.W.2d 661, stressed by the defendants, although close on its facts, concerned an uncontrolled intersection and not a protected arterial one.
 
 
 32
 Finally, on this point we conclude that, in any event, the court's charge, when read as a whole, actually submitted to the jury what the defendants claim is an omission here. The court did submit § 169.14, subd. 1, which requires that "in every event" speed shall be so restricted as to avoid a collision with a vehicle entering the highway legally and with due care. The court also submitted the first paragraph of § 169.20, subd. 3, which relates to the driver on the intersecting highway and provides that after he has stopped and yielded "the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so proceeding into or across the through highway". And the court instructed the jury generally as to reasonable care, negligence, lookout, reasonable speed, and the like, and their application to Jerome as well as to Anderson. The obligations of Jerome to reduce speed and to yield under appropriate circumstances were thus before the jury. While one may wish that the trial court had submitted the reduced speed statute — and its submission here would not, we feel, have been error — its failure so to do is likewise not error here.
 
 
 33
 The amber light instruction. The defendants requested that the court submit an instruction relating to the duty of a motorist proceeding through an intersection marked by a flashing yellow sign.[4] The court, however, submitted this feature of the case to the jury by reading § 169.06, subd. 7, which relates not only to the driver against the yellow, but, as well, to the driver against the red.[5]
 
 
 34
 The defense theory is that there is a distinction between the obligations a driver possesses on an ordinary through highway and those he has on a through highway controlled by flashing yellow and that the latter are greater than the former. It must be conceded that the Minnesota statute recognizes this approach when it provides that a driver may proceed through the flashing yellow "only with caution". Furthermore, the Minnesota court has refused to equate a highway controlled by a yellow signal with a through highway protected only by stop signs. Daugherty v. May Bros. Co., 265 Minn. 310, 121 N.W.2d 594, 601 (1963). See State for Use and Benefit of Hopkins v. Marvil Package Co., 202 Md. 592, 98 A.2d 94, 97-98 (1953).
 
 
 35
 But, granting this, we fail to see error in the court's refusal to give the requested instruction. The one actually given was the applicable statute. It, too, emphasized caution and it contained, as we read it, everything embraced in the requested instruction except, possibly, the specific reference differentiating a highway protected by arterial stop signs. We cannot, however, assume that this jury was so unintelligent as not to understand what was involved in the instruction as given or the meaning of the word "caution" or its application to this very highway intersection.
 
 
 36
 The special verdict. As has been noted, the case was submitted with the consent of counsel on special verdict. The defendants argue that, although the trial judge "did not expressly advise the jury what the legal effect of their answers to the special verdict questions would be", the charge as a whole impliedly so informed them. It is then urged that, because of the size of Elaine's verdict and of Vincent's peculiar posture (growing out of Jerome's and Elaine's minority and out of Vincent's ownership of the automobile) as both a plaintiff and a third party defendant, confusion and sympathy were present and prejudice against the defendants must have resulted.
 
 
 37
 We are not persuaded. At the conclusion of the charge but before the jury retired all counsel agreed that all eight questions submitted were to be answered. The defendants did take exception to the charge "as being a combination charge for a general verdict and a special verdict" and did state that the jury should not be able under a special verdict to infer what the implications of their answers were. The court complied with the request of counsel and made it very clear to the jury that they were to answer all the questions. As to this there was no objection.
 
 
 38
 We are aware that it has been said that among the purposes of a special verdict are the emphasis of facts and the removal of elements of personalities and prejudice, and that lack of knowledge by the jury as to the effect of its findings is helpful in the achievement of those purposes. 2B Barron & Holtzoff, Federal Practice & Procedure, § 1051, pp. 329-30 (Wright Rev. 1961); Ruddy v. New York Central R. R. Co., 124 F.Supp. 470, 472 (N.D.N.Y.1954), aff'd in part, 224 F.2d 96 (2 Cir. 1955), cert. denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 779; Mazer v. Lipschutz, 31 F.R.D. 123, 127-128 (E.D.Pa.1962), aff'd in part, 327 F.2d 42 (3 Cir. 1963).
 
 
 39
 Submission of a special verdict to a federal jury, however, is a matter of procedure governed by the federal rules and not by state practice. Lang v. Rogney, 201 F.2d 88, 97 (8 Cir. 1953); McDonnell v. Timmerman, 269 F.2d 54, 58 (8 Cir. 1959). It is permissive and is not a matter of right and it is discretionary with the trial court. Great American Ins. Co. v. Horab, 309 F.2d 262, 266 (8 Cir. 1962); Siegfried v. Kansas City Star Co., 298 F.2d 1, 8 (8 Cir. 1962), cert. denied 369 U.S. 819, 82 S.Ct. 831, 7 L.Ed.2d 785; Skidmore v. Baltimore & Ohio R. R. Co., 167 F.2d 54, 66-67 (2 Cir. 1948), cert. denied 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371; Callan v. Great Northern Ry., 299 F.2d 908, 914 (9 Cir. 1961); 2B Barron & Holtzoff, Federal Practice & Procedure, § 1054 (Wright Rev. 1961); 5 Moore, Federal Practice, Par. 49.03 [1] (2d Ed. 1964). Indeed, the very language of Rule 49(a), F.R.Civ.P., supports this conclusion.
 
 
 40
 There are indications in some state cases that if, in submitting a special verdict, the jury is advised, expressly or by implication, of the result of its findings, reversible error is committed. McCourtie v. United States Steel Corp., 253 Minn. 501, 93 N.W.2d 552, 562-564 (1958) (but see footnote 6, p. 563 of 93 N.W.2d); Banderob v. Wisconsin Cent. Ry. Co., 133 Wis. 249, 287, 113 N.W. 738, 751 (1907); McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213, 216-217 (1929). See Thedorf v. Lipsey, 237 F.2d 190, 193-194 (7 Cir. 1956) and comment in this court's pre-Rules decision in Ward v. Cochran, 71 F. 127, 134 (8 Cir. 1895). It is to be observed, however, that in both Texas and Wisconsin a special verdict is mandatory when requested by either party and that the Minnesota court's holding is not without its criticism. 43 Minn.L.Rev. 823 (1959).
 
 
 41
 This court gave an adverse answer to the defendants' contention in Concord Co. v. Willcuts, 125 F.2d 584, 589 (8 Cir. 1942), cert. denied 316 U.S. 705, 62 S.Ct. 1309, 86 L.Ed. 1773, when it said. "We have found nothing in the rule * * * which appears to cast any doubt upon the propriety of the court's submission of the written question in this case. The objections that it let the jury know what effect their answers would have * * * have been considered". The situation presented in Siegfried v. Kansas City Star Co., supra, p. 8 of 298 F.2d, is of like effect. See, also, 2B Barron & Holtzoff, Federal Practice & Procedure, § 1056, p. 349 (Wright Rev. 1961).
 
 
 42
 It seems plain to us that a knowledgeable juror in receiving the court's entire charge in this case, would obviously know the effect of the jury's answers to the eight questions submitted. The court observed that one of the jury's principal responsibilities "is to determine the question of legal liability". It spoke of responsibility for accidents, of the grounding of liability on negligence, of negligence arising out of the violation of a duty to exercise reasonable care, of proximate cause, and of burden of proof. Under Rule 49(b) the court could have submitted written interrogatories with forms for a general verdict and, of course, it could have submitted the case on a general verdict. It seems both illogical and unrealistic, particularly in the light of the discretionary aspect of the rule, to say that, because a special verdict was employed, nothing in the charge must intimate to the jury the legal effect of their answers. There may be situations where legal effect ought to be deemphasized but we fail to perceive any error in its presence in this case. We conclude that this was a matter for the trial court's discretion and we further find no abuse in the exercise of that discretion here.
 
 
 43
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 § 170.54 Driver deemed agent of owner "Whenever any motor vehicle * * * shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."
 
 
 [2]
 "§ 169.14 Speed restrictions
 "Subdivision 1. Basic rule. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.
 "Subd. 2. Speed limits. Where no special hazard exists the following speeds shall be lawful, but any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; * * *
 (1) 30 miles per hour in any municipality;
 (2) 60 miles per hour in other locations during the daytime;
 (3) 50 miles per hour in such other locations during the nighttime.
 `Daytime' means from a half hour before sunrise to a half hour after sunset, except at any time when due to weather or other conditions there is not sufficient light to render clearly discernible persons and vehicles at a distance of 500 feet.
 `Nighttime' means at any other hour or at any time when due to weather or other conditions there is not sufficient light to render clearly discernible persons and vehicles at a distance of 500 feet.
 "Subd. 3. Reduced speed required. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions. * * *"
 Subd. 2 was amended in details not significant here by Session Laws 1963, c. 843, § 1.
 
 
 [3]
 "§ 169.20 Right of way * * *
 "Subd. 3. Through highway — stop sign. The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway. * * *"
 
 
 [4]
 "You are instructed that a motorist proceeding through an intersection on a flashing yellow does not have the same protection as a motorist driving on a through highway protected by arterial stop signs, but driver may proceed past the flashing yellow light only with caution."
 
 
 [5]
 "169.06 * * *
 "Subd. 7. Flashing signals. When flashing red or yellow signals are used they shall require obedience by vehicular traffic, as follows:
 "(1) When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked, and the right to proceed is subject to the rules applicable after making a stop at a stop sign;
 "(2) When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past the signals only with caution."