**MAYTAG CORPORATION and Jenn–Air Company, Counterclaim Plaintiffs,**

v.

**Robert A. CLARKSON, Counterclaim Defendant.**

**Civ. A. No. 3:92–1729–19.**

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 8, 1995.

H. Simmons Tate, Jr., Manton M. Grier, and Hamilton Osborne, Jr., Sinkler & Boyd, P.A., Columbia, SC, for counterclaim plaintiffs.

S. Jahue Moore, Kirkland, Wilson, Moore, Allen, Deneen and Taylor, P.A., West Columbia, SC, and John P. Freeman, Columbia, SC, for counterclaim defendant.

## ORDER

SHEDD, District Judge.

On December 13, 1994, while the jury was deliberating the claim of Maytag Corporation and Jenn–Air Company (collectively "Jenn–Air") against Robert A. Clarkson, the Court informed the parties and their counsel that it believed the closing argument of S. Jahue Moore (one of Clarkson's attorneys) was improper, that it was reviewing the matter, and that it may have further comment thereon. The Court has now carefully reviewed this matter and has set forth below its comments with respect thereto.[1]

### I

Jenn–Air's claim against Clarkson was for recovery of approximately $1.5 million under a personal guaranty he signed concerning debt incurred by the R.J. Clarkson Company ("the Company"). Jenn–Air presented this claim to the jury on December 13, after the Court had dismissed the Company's claim against Jenn–Air.[2] Jenn–Air called one witness who testified that the guaranty was valid and in effect, and introduced several exhibits into the record. While Mr. Moore cross-examined Jenn–Air's witness, Clarkson himself did not testify but, instead, chose to rely on his earlier trial testimony relating to the guaranty. Under the established facts of the case and the evidence presented concerning the guaranty, the only issue for the jury to decide was whether Jenn–Air had, as Clarkson testified, agreed to substitute cer-

---

**1.** Although Clarkson has filed a notice of appeal, this Court retains jurisdiction over this specific matter. *Cf. Langham–Hill Petrol, Inc. v. Southern Fuels Co.,* 813 F.2d 1327, 1330–31 (4th Cir.), *cert. denied,* 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987) (district court retains jurisdiction for Rule 11 sanctions after notice of appeal is filed).

**2.** The trial of the Company's claims lasted for nearly 2 months. At the close of the Company's case, the Court granted judgment as a matter of law against the Company on all of its claims.

tain letters of credit provided by the Company in lieu of the guaranty. Absent such an agreement, under the Court's prior rulings, the guaranty was valid and enforceable, and Clarkson was liable thereunder.

Prior to presenting its evidence, Jenn–Air requested that the Court consider submitting the matter to the jury by using a special verdict form which asked the jury to answer whether Jenn–Air had agreed to substitute the letters of credit in lieu of the guaranty. Mr. Moore stated at that time that he believed that the use of a special verdict form was "totally inappropriate." *Transcript* at 6.[3] Thereafter, following presentation of the evidence, the Court had a conversation on the record with Mr. Moore concerning the form of the verdict, in which Mr. Moore indicated that despite the fact that there was only one factual issue for the jury to resolve, he did not want the issue to be submitted by means of a special verdict:

> THE COURT: Mr. Moore, I want to look at the charges [and] the verdict form. You said you objected. I think that verdict form is absolutely appropriate. That is my impression. You think it is not?
>
> MR. MOORE: Yes, sir. Honestly, I think the way it should be written is rather than special interrogatories it should be we find for the counterclaim defendant Robert A. Clarkson or we find for Jenn–Air/Maytag. The way they got it written by way of special interrogatory, first of all is unnecessary. Second of all, it is somewhat confusing to me. They clearly are going to know who they are going to rule for. There is no reason to put a special interrogatory of any type. Simply we rule for Robert. We rule for Jenn–Air.
>
> THE COURT: In this case this is the only issue outstanding; isn't it?
>
> MR. MOORE: Absolutely.
>
> THE COURT: You use a general verdict form generally when there are a number of issues to decide. They only have to decide this issue. It strikes me—I guess it is a special verdict form.
>
> MR. MOORE: Certainly. It seems to me as simple as the issue is in this case, there

should be no real reason for any type of special verdict form. You either are going to rule for one side or the other.

. . . . .

> THE COURT: It strikes me, Mr. Moore, to use a general verdict form when everybody knows this is the only issue. The jury will be faced with one issue. Was the personal guaranty released by way of substitution?

*Transcript* at 80–81. After reviewing the matter carefully, the Court overruled Mr. Moore's objection and decided to submit the case to the jury using a special verdict form:

> THE COURT: All right. What I plan to put on the verdict form is—I will read it to you then you can come see it too. "Did Jenn–Air Company agree to release Robert A. Clarkson from his obligations under his personal guaranty by substituting for the guaranty a letter of credit provided by the R.J. Clarkson Company?"

. . . . .

> MR. MOORE: We believe a special interrogatory of some sort or any sort in this case is unnecessary since there can only be one issue. We believe that all we are going to be doing by setting forth a special interrogatory in this verdict is creating confusion. The jury should simply be asked to rule for Clarkson or Jenn–Air, which would eliminate and eradicate any possible chance of confusion on a yes or no verdict. We believe the form like this is confusing and it's going to be very difficult to know what "yes" means or what "no" means.

. . . . .

> THE COURT: The objection is stated, I will just respond for the record. I think that a special verdict is appropriate in this case because we only have one factual determination that has to be made in this case, and that will determine the outcome of the case.

*Transcript* at 83–84. At this point, Mr. Moore persisted in his objection to the special verdict form:

---

3. All transcript references are from the December 13, 1994, trial transcript.

MR. MOORE: Could we do this, in order to clarify what "yes" and "no" mean, if out by "yes, it means rule in Clarkson's favor, no—"

THE COURT: No, sir. I appreciate that and I thought about that, the point is, I don't want them to rule in Clarkson's favor or in Jenn–Air's favor, I want them to answer the question. And by answering the question, then I will be able to enter judgment accordingly. I don't want it to come to a question of who they like better, or want to rule in favor of, but they have to answer a fact specifically. That takes out, in my opinion, any risk that they are ruling on something other than the factual issue.

*Transcript* at 85.

Pursuant to Rule 51 of the Federal Rules of Civil Procedure, and without objection by the parties, the Court elected to instruct the jury as to the applicable law prior to the attorneys' closing arguments so that the jurors would understand that there was only one issue for them to decide,[4] a point which the Court made clear in the instructions. *See Transcript* at 98–100. Thereafter, the attorneys made their closing arguments to the jury. The Court has set forth below pertinent portions of Mr. Moore's closing argument:

MR. MOORE: Ladies and gentlemen, the Court has allowed us 20 minutes to speak with you after 25 or 26 or 27 days.

.     .     .     .     .

You know, the judge in this case has told you that he has dismissed as unfounded almost everything. Not almost, but everything we had to say. Our entire case was dismissed.

Under the law in this country, a person does have a right to a trial by jury, but before a jury is allowed to pass, the judge does have the right to do what this judge did, which is to consider the case, and if the judge finds the case unfounded, he can do what he did and dismiss it.

So, basically none of the stuff that we spent 27 days here trying to convince you of did the judge find to be founded. None of that material is before you, and we certainly are saddened by that.

THE COURT: Mr. Moore, move on to what is in front of you.

MR. MOORE: Thank you.

THE COURT: That is not relevant.

MR. MOORE: We must deal with what we have. The judge ruled as a matter of law that the Clarkson Company owes Jenn–Air approximately a million and-a-half dollars, and the question now is, really, whether or not Mr. Robert Clarkson individually should be responsible for the corporation's debt.

So, even though the case is now very limited, you can see that the question before you of whether or not Robert individually should have to pay these people a million and-a-half dollars is still a very serious and very important question. This day represents an extremely important day in the life of my client, Robert Clarkson.

You know, we basically are dealing here with a question of justice, that's what the courts are about. You have heard the testimony, you have heard the testimony with regard to the guaranty.

Justice is a search for the truth, and the question is, under these facts as you have heard them, is it fair, is it proper, is it moral, is it just for Robert Clarkson to walk away from this courthouse owing the Jenn–Air Company individually a million and-a-half dollars? I submit the answer to that question is no.

*Transcript* at 104–06. After these comments, Mr. Moore focused his argument on the relevant issue—whether the letters of credit were substituted for the guaranty. *See Transcript* at 106–10. However, he concluded as follows:

MR. MOORE: We worked on this case for two and-a-half years, something almost every single week. I worked with Robert, I have worked with his parents and his

---

4. The Advisory Committee Notes to the 1987 Amendment to Rule 51 indicate that one benefit of charging the jury in this manner is that "it gives counsel the opportunity to explain the instructions, argue their application to the facts and thereby give the jury the maximum assistance in determining the issues and arriving at a good verdict on the law and the evidence."

brother and his family. We have taken depositions all over the country and we spent roughly two months—

THE COURT: It's not relevant, Mr. Moore, move on with this issue.

MR. MOORE: Thank you, sir. We ask you in this case—we ask you in this case for justice. We ask you in this case for what is right and for what is moral and for what is decent and for what is just.

If under these facts you determine that it is justice for Robert Clarkson to walk out of this courthouse owing these people a million and-a-half dollars individually, then vote with them in your verdict.

At this point in time I have done everything I know to do to help this man, this company, and his family.

*Transcript* at 110–11. Counsel for Jenn–Air did not object to Mr. Moore's closing argument in any respect.

During its deliberation, the jury sent a note to the Court concerning a matter which was clearly irrelevant to the issue submitted.[5] Over Mr. Moore's objection, the Court instructed the jury that its question related to an irrelevant point and, therefore, should not be of any concern in its deliberations. The Court reiterated to the jury that the only issue for its consideration was whether Jenn–Air agreed to substitute the letters of credit for the guaranty.[6] *See Transcript* at 121–24. Shortly thereafter, the Court sent the jury home for the day. The following day, the jury returned its verdict, answering "no" to the interrogatory. Upon receipt of this answer, the Court entered judgment in favor of Jenn–Air.

## II

■■■ "The right to trial by an impartial jury which decides the case on the basis of the evidence submitted at trial is paramount in our system of justice." *Housden v. Unit-*

*ed States,* 517 F.2d 69, 70 (4th Cir.1975). A jury's verdict "must be based on the evidence developed at the trial," *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); and " 'a jury capable and willing to decide the case solely on the evidence before it' " is "[o]ne touchstone of a fair trial." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984) (citations omitted). It is thus imperative that the jury be "an impartial, unbiased tribunal which represents only the Goddess of Justice and Law and seeks to arrive at a just verdict in the light of the evidence and the law." *Petro v. Secary Estate,* 403 Pa. 540, 170 A.2d 325, 327–28 (1961).

■■■ In order to aid the jury in fulfilling its duty, our system of justice permits each litigant's attorney to make a closing argument after all of the evidence has been presented. "The sole purpose of closing argument is to assist the jury in analyzing the evidence," *United States v. Iglesias,* 915 F.2d 1524, 1529 (11th Cir.1990), *reh'g denied,* 923 F.2d 867 (11th Cir.1991); by allowing the attorneys to "state the contentions of the party on the law and the facts." *Tashjian v. Boston & Me. R.R.,* 80 F.2d 320, 321 (1st Cir.1935). While courts generally give considerable leeway to attorneys regarding the content of their closing arguments, *see Commercial Credit Equip. Corp. v. L & A Contracting Co.,* 549 F.2d 979, 981, *reh'g denied,* 553 F.2d 100 (5th Cir.1977); there are, of course, limits to what the attorneys may argue. Simply put, a closing argument "must be a fair presentation of a party's case and claims from [its] point of view; [and] must be confined to the evidence and must not appeal to passion or prejudice or sympathy in an unfair way." *Tashjian,* 80 F.2d at 321; *see also Gathers v. Harris Teeter Supermarket, Inc.,* 282 S.C. 220, 317 S.E.2d 748, 755 (App.1984) ("In a closing argument to the

---

**5.** The note appeared to relate to an issue concerning the validity of the guaranty separate from the novation theory advanced by Clarkson.

**6.** It was at this point that the Court informed Mr. Moore that it was reviewing his closing argument. *See Transcript* at 125–26. Mr. Moore responded by stating that if he said anything improper, it was unintentional. *Id.* at 126. Giv-

en the number and type of comments made, particularly under the circumstances of this case, it is difficult to believe that Mr. Moore did not intend to make these comments. In any event, even prejudicial or improper comments that are unintentionally made have a serious effect on a trial and are therefore just as inappropriate.

jury, an attorney may not make such remarks which are unfairly calculated to arouse passion or prejudice"). Therefore, "[a]rguments by counsel which invite the jury to base its verdict on considerations not relevant to the merits of the case are improper," *Hoeffner v. The Citadel,* 429 S.E.2d 190, 193 (S.C.1993); and may warrant grounds for a new trial. *Mileski v. Long Island R. Co.,* 499 F.2d 1169, 1171 (2d Cir.1974); *see, e.g., Leathers v. General Motors Corp.,* 546 F.2d 1083 (4th Cir.1976) ("golden rule" argument).[7]

■ The Fourth Circuit has recognized that "sympathy appeals are the most obviously improper arguments from a technical standpoint" as they "hav[e] no legal relevance to any of the real issues," and are therefore "*per se* objectionable" in any case. *Arnold v. Eastern Air Lines, Inc.,* 681 F.2d 186, 199 (4th Cir.1982), *cert. denied,* 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983). Other courts have similarly expounded on the impropriety of sympathy appeals to the jury:

> Sympathy for suffering and indignation at wrong are worthy sentiments, but they are not safe visitors in the courtroom, for they may blind the eyes of Justice. They may not enter the jury box, nor be heard on the witness stand, nor speak too loudly through the voice of counsel. In judicial inquiry the cold clear truth is to be sought and dispassionately analyzed under the colorless lenses of the law.

*F.W. Woolworth Co. v. Wilson,* 74 F.2d 439, 443 (5th Cir.1934); *see also Klotz v. Sears, Roebuck & Co.,* 267 F.2d 53, 55 (7th Cir.1959) (quoting and following *Wilson* ).

■ In this case, it is obvious that Mr. Moore's closing argument was designed at least in part to elicit sympathy from the jury toward Clarkson. Several comments made by Mr. Moore during his closing argument illustrate this point. First, the Court had to interrupt Mr. Moore as he was commenting that he and Clarkson were "saddened" by the fact that the Court dismissed the Company's case against Jenn–Air after 27 days of trial.[8] Second, Mr. Moore asked the jury to consider whether it was "fair," "proper," "moral," or "just" for Clarkson to "walk away from this courthouse owing the Jenn–Air Company individually a million and-a-half dollars." Third, the Court again had to interrupt Mr. Moore as he was telling the jury how hard he and Clarkson had worked on this case for over two years. Fourth, Mr. Moore stated that he was asking the jury for what was "right," "moral," "decent," and "just." Finally, Mr. Moore concluded by telling the jurors that if they believed that it was "justice" for Clarkson to be personally liable to Jenn–Air, then they should vote for Jenn–Air.[9]

■ Each of the foregoing comments is irrelevant to the issue before the jury and, standing alone, appear to be pleas for sympathy. Any doubt about the purpose of these comments is dispelled when the comments are placed in the context of this case. Mr. Moore had spent over 20 days attempting to prove to the jury that Jenn–Air had committed various wrongful acts against the Company and Clarkson. The Court determined as a matter of law that Mr. Moore had failed in this endeavor. Thereafter, when Jenn–Air presented its claim against Clarkson, Mr.

7. Such arguments may also constitute improper conduct under South Carolina Rule of Professional Conduct ("SCRPC") 3.4(e), which provides that in trial, a lawyer shall not "allude to any matter that the lawyer does not reasonably believe is relevant ... or state an opinion as to the justness of a cause...."

8. The Court had previously instructed the jury, with approval of all counsel, concerning the dismissal of the Company's case: "Let me say this, and I want to make this very clear to you. The fact that I have made determinations, as to the Clarkson Company's case being ended, as to the defendants, is to have absolutely no bearing on your consideration of the next issue, which is a

claim by the defendants back toward Robert A. Clarkson individually." *Transcript* at 9.

9. Of course, it may, in certain circumstances, be proper for an attorney to ask the jury for "justice," when, for example, the appeal for "justice" is an appeal for the jury to properly review the evidence in light of the applicable law and reach a true verdict. However, a jury does not do "justice" when it ignores the evidence or the controlling law in order to reach a certain result which is consistent with one side's notion of fairness. In this case, it is clear that Mr. Moore's appeal for "justice" was an appeal for the jury to rule in favor of Clarkson regardless of the evidence or the controlling law.

Moore, perhaps sensing that the jury may have been influenced by his prior presentation and allegations against Jenn–Air, argued against the use of a special verdict form despite his express acknowledgement that there was only one fact for the jury to find.[10] It is clear that Mr. Moore did not want the jury's attention focused on the sole issue; instead, he wanted the jury to be able to rule for either Clarkson or Jenn–Air without having to answer the specific question which was dispositive in this case.[11]

### III

■■■ It is a principle of appellate review that "the propriety of comment by counsel in closing argument is best evaluated, in most instances, by the trial judge," *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 542 (2d Cir.1989); who is in a better position than an appellate court to appraise the nature and effect of the argument, *Reed v. Philadelphia, Bethlehem & New England R. Co.*, 939 F.2d 128, 133 (3d Cir.1991); and, therefore, appellate courts normally accord substantial deference to the trial judge's determination concerning the propriety *vel non* of a closing argument. *United States v. Hernandez*, 865 F.2d 925, 928 (7th Cir.1989). The logic of this principle is self-evident: having heard the entire case and observed the demeanor of the litigants, witnesses, and counsel, the trial judge normally has a much better sense of the nature and tone of a closing argument than does an appellate court, which must rely solely on the transcript. Undoubtedly, in some cases, the deference accorded to the trial judge is particularly critical because the transcript may not reflect the true nature of a particular closing argument. This is not such a case since, from a review of the transcript alone, the Court believes that there can be no reasonable doubt concerning the impropriety of Mr. Moore's closing argument. To the extent that reasonable minds could differ on this point, the Court emphasizes that the circumstances of this case and the manner in which it was presented, leave the Court convinced that Mr. Moore's closing argument was improper. However, because the jury found in favor of Jenn–Air, the impropriety of Mr. Moore's closing argument as it relates to the case itself is now moot. Therefore, while this matter is now closed, this Order should serve as a reminder to all counsel that arguments of the type addressed herein are improper and will not be tolerated in this Court. *See generally Howard v. State Farm Mut. Auto. Ins. Co.*, 450 S.E.2d 582, 585 (S.C.1994) (cautioning the bar that improper closing arguments should be avoided).[12]

---

**10.** Mr. Moore's argument concerning the use of a special verdict form in this case is directly contrary to the underlying purposes of such a form. Special verdict forms, which are generally favored, serve the purpose of identifying the basis for the jury's verdict and, therefore, avoiding confusion and appellate uncertainty. *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 190 (4th Cir.1994). Under the special verdict system, "the jury makes findings on all issues of material fact and the court applies the law." *Portage II v. Bryant Petrol, Corp.*, 899 F.2d 1514, 1521 (6th Cir.1990). This system " 'enables the public, the parties and the court to see what the jury has really done.' " *Id.* at 1520 n. 10 (citation omitted). Of particular relevance here is that by emphasizing the critical facts which need to be resolved and not informing the jury of the effect of its findings thereon, special verdict forms remove elements of personalities and prejudice from the case and require the jury to state specifically its factual finding. *Lowery v. Clouse*, 348 F.2d 252, 260 (8th Cir.1965).

**11.** This is also evidenced by Mr. Moore's position concerning the jury's question to the Court. While Mr. Moore, when pressed, could not offer any possible basis for the question to be relevant, he nevertheless objected to the Court's instruction to the jury that the question was not relevant. *See Transcript* at 123–24.

**12.** The Court notes that Mr. Moore's sympathy appeals, while the most blatant, were not his only improper closing argument comments. As one other example, during the trial of the Company's claims, Mr. Moore highlighted the fact that Jenn–Air and certain of its witnesses, unlike Clarkson and the Company, were not from South Carolina. In light of this, Mr. Moore's comment that "[i]t's admitted under this evidence that the R.J. Clarkson Company is a South Carolina cor-

poration and has been for a number of years" appears clearly to be an appeal to local prejudice which, of course, is improper. *See Herman v. Hess Oil V.I. Corp.,* 524 F.2d 767, 772 (3d Cir. 1975) ("an appeal to local prejudice against for-eign defendants is never permissible"); *Norris v. Ferre,* 432 S.E.2d 491, 493 (S.C.App.1993), *cert. denied* (S.C.1994) ("Appeals to local prejudice are improper and should not be made in the trial of a case").